**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

JOSÉ LUIS DÍAZ COLÓN, et al.,

       Plaintiffs,

          v.                        CIVIL NO.: 09-1835 (FAB/MEL)

PEDRO TOLEDO DÁVILA, et al.,

       Defendants.

---

CARMELO VELÁZQUEZ COLÓN, et al.,

       Plaintiffs,

          v.                        CIVIL NO.: 10-1097 (FAB/MEL)

JOSÉ FUENTES AGOSTINI, et al.,

       Defendants.

---

**REPORT AND RECOMMENDATION**

## I. PROCEDURAL HISTORY

On August 21, 2009, plaintiffs José Luis Díaz-Colón, on his own and on behalf of his minor son, J.L.D.R.; Linda Delgado, on behalf of her minor daughter, D.M.D.D.; Zoraida Colón-Cartagena; Pedro Díaz; Pedro Luis Díaz-Colón; Yahaira Enid Díaz-Colón; the Estate of Leopoldo Sanabria-Díaz, comprised of his minor children, J.L.S.D., J.L.L.S.D., and L.S.D.; Lourdes De Jesús-Velázquez, on her own and on behalf of her minor children, J.L.S.D., J.L.L.S.D., and L.S.D.; Albaela Díaz-Carballo; Leonardo Sanabria-Díaz; Jennifer Piris-Jusino, on her own and on behalf of her minor daughter, G.R.P.; and Lucy Guzman-Borrero ("first set of plaintiffs") filed a complaint against, *inter alios*, Pedro Toledo-Dávila ("Toledo"), Aníbal

Solivan Solivan ("Solivan" or "Sullivan"),[1] Héctor Tirado ("Tirado"), Daniel Colón ("Colón"), Francisco Báez-Quiñones ("Báez"), Jesús Figueroa Cruz,[2] José Fuentes-Agostini ("Fuentes"), the Estate of Ulpiano Crespo ("Crespo"), Gabriel Redondo ("Redondo"), José Figueroa, José Capó ("Capó"), and Zoé Díaz-Colón for violations of the Fourth and Fourteenth Amendments to the U.S. Constitution[3] under 42 U.S.C. §§ 1983 ("Section 1983") and 1988 ("Section 1988") and claims arising under Article II, §§ 7, 8 and 10, of the Constitution of the Commonwealth of Puerto Rico, and Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 5141, 5142.[4]  Docket No. 1.  These plaintiffs filed an amended complaint on November 9, 2009. Docket No. 8.  In a separate case, plaintiffs Carmelo Velázquez Colón, Carmelo Colón Rivera, Orlando Colón Velázquez, Orlando Ramos Félix ("Ramos"), Josefa Félix, José Antonio Félix, Eliseo Ramos Félix, Héctor Julio Merced Gómez, Juan Marcos Merced Gómez, Héctor Merced Rodríguez, María E. Gómez Velázquez, Leopoldo Sanabria Morales, Maribel Ortiz Vázquez on behalf of minor J.M.S.O., Ana Luisa Díaz Rivera, Yolanda Ortiz Díaz, Evelyn Ortiz Díaz, Luis Daniel Ortiz Díaz, Digno Ortiz Díaz, and Francis I. López Díaz ("second set of plaintiffs") filed a complaint on February 8, 2010, against, *inter alios*, the aforementioned twelve defendants[5] for violations of the Fourth, Eighth, and Fourteenth Amendments under, *inter alia*, Sections 1983 and 1988 and claims arising under the aforementioned provisions of Puerto Rico law.  Docket No. 1 in Case No. 10-1097 (FAB/MEL).  These two cases were consolidated on September 1, 2010.  Docket No. 54.

---

[1] Although he is called Aníbal Sullivan in both complaints, Solivan refers to himself as Aníbal Solivan Solivan in his filings.  See, e.g., Docket Nos. 22; 123; 129.

[2] In his answer to the amended complaint, Jesús Figueroa Cruz notes that Jesús Figueroa De Jesús, which he is called in both complaints, is not his correct name.  Docket No. 46, at 1.

[3] Plaintiffs voluntarily dismiss their Fourteenth Amendment Due Process Clause causes of action as to all defendants in both cases.  Docket No. 124, at 1 n.1.

[4] Plaintiffs cite these laws incorrectly as 32 L.P.R.A. §§ 5141, 5142, rather than 31 L.P.R.A. §§ 5141, 5142.  Docket No. 8, ¶ 5; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 4.

[5] The second set of plaintiffs named Ulpiano Crespo, rather than the Estate of Ulpiano Crespo, in their complaint.

Pending before the court is a motion to dismiss filed by defendants Colón, Capó, José Figueroa, Redondo, Tirado, Fuentes, Toledo, Solivan, Báez, and Jesús Figueroa Cruz ("moving defendants" or "defendants"), along with a supplemental motion to dismiss.  Docket Nos. 123; 129.  All plaintiffs from the consolidated case filed a response in opposition.  Docket No. 124. For the reasons set forth below, it is recommended that defendants' motion be granted in part and denied in part.[6]

## II.    FACTUAL ALLEGATIONS

The factual allegations in the complaints in the two cases contain substantial overlap. Docket No. 8; Docket No. 1 in Case No. 10-1097 (FAB/MEL).  The non-conclusory factual allegations are taken as true for the purpose of the pending motion.  The first set of facts consists of facts common to both complaints; the second set is exclusively from the amended complaint in Case No. 09-1835 (FAB/MEL).

### A.      Both Complaints

In May or June 1998, Jesús Figueroa Cruz, a police officer with the Criminal Investigations Corps of Guayama ("CIC"), and Capó, a Puerto Rico district attorney, had a discussion concerning testimony of Zoé Díaz-Colón regarding unsolved murders.  Docket No. 8,

---

[6] The undersigned is issuing a report and recommendation, rather than an opinion and order, regarding this dispositive motion because there is a lack of unanimous consent.  Co-defendant Zoé Díaz-Colón is yet to appear before the court.  See Docket No. 103.  Furthermore, defendants Tirado, José Figueroa, and the Estate of Ulpiano Crespo are in default in Case No. 09-1835 (FAB/MEL).  See Docket Nos. 37; 40; 42; 43; 44; 103; 106.  Courts have held that parties in default are procedurally precluded from consenting to proceed before a magistrate judge.  See U.S. Fid. & Guar. Co. v. P.R. Enters., Inc., Civ. No. 03-1338 (FAB/MEL), 2005 WL 2244283, at *2 (D.P.R. Sept. 15, 2005) (approving and adopting report and recommendation) (unpublished) ("While consent to a magistrate judge's designation can be inferred from a party's conduct during litigation, there can be no inference of conduct when a party that has been served has not appeared and is in default."); Don King Prods. v. Otero, Civ. No. 04-2155 (JAG), 2005 WL 2138807 (D.P.R. Sept. 1, 2005) (unpublished) (citing Roell v. Withrow, 538 U.S. 580 (2003); Henry v. Tri-Services, Inc., 33 F.3d 931 (8th Cir.) (vacating magistrate judge's order denying motion to vacate judgment of default because, though four of five parties agreed to have final judgment determined by magistrate judge, record contained no clear statement fifth party, which had not yet appeared, ratified such agreement).  Therefore, as matters stand procedurally at this time, the undersigned has authority to issue rulings on non-dispositive motions and recommendations on dispositive motions, but lacks jurisdiction to preside over trial and entry of judgment.  The Clerk of the Court shall notify any reports and recommendations filed in these consolidated cases to the presiding District Judge.

¶¶ 3.10, 3.15, 4.1-4.2; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 25, 28, 33.  Zoé Díaz-Colón was a confidential informant who had worked with the CIC since August 2, 1995.  Docket No. 8, ¶ 3.17; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 29.

Capó ordered subordinate prosecutors to take Zoé Díaz-Colón's statements under oath and to file criminal charges against the implicated persons.  Docket No. 8, ¶ 4.2; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 33.   On June 11, 1998, Zoé Díaz-Colón gave two sworn statements to two prosecutors, including José Figueroa, and in the presence of Báez, a police officer. Docket No. 8, ¶¶ 3.10, 3.14, 4.3-4.4; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 25, 28, 38.  Zoé Díaz-Colón provided the following testimony concerning the August 3, 1995, murder of Rafael Colomba Ortiz ("Colomba"), as described in the amended complaint in Case No. 09-1835 (FAB/MEL):

> On July 29, 1995, in [**ZOÉ**] **DIAZ-COLON'S** presence, **RAMOS, SANABRIA** and **Velazquez** planned to kill **Colomba** for $300.

> On August 3, 1995, [**ZOÉ**] **DIAZ-COLON** and four friends were in "La Plena" Ward, Salinas, Puerto Rico, and went to "Pueblo del Carmen," where they played billiard in an establishment from 5:00 p.m., to 8:30 p.m.

> After 8:30 p.m., while [**ZOÉ**] **DIAZ-COLON** and her friends were returning by car to "La Plena" Ward, in the vicinity of **Colomba's** house, she saw **RAMOS,** with a revolver in his hand, together with **SANABRIA** and **Velazquez**, getting into an automobile and fleeing the scene.

> [**ZOÉ**] **DIAZ-COLON** told her friend to stop the car, and, when they got off, she saw **Colomba** dead on the ground, next to his car.

> [**ZOÉ**] **DIAZ-COLON** and her friends got back in the car and drove towards a business establishment known as "El Negocio de Judith" ("Judith's Place"). Once there, she saw **SANABRIA**, **RAMOS** and **Velazquez** playing pool. She approached them and spoke with **RAMOS.** She was able to perceive that they looked very scared.

Docket No. 8, ¶¶ 4.3-4.5 (emphasis in original); Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 38.

Zoé Díaz-Colón did not stop at a police station on August 3, 1995, to report the events that she claimed they witnessed.[7]   Docket No. 8, ¶ 4.6; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 39.  Zoé Díaz-Colón first reported the events in 1998.  Id.  The individuals Zoé Díaz-Colón stated she was with were not interviewed by the investigating agents, were not offered as witnesses by the prosecution, and were not found by the defense.  Id.

On June 11, 1998, Zoé Díaz-Colón also provided the following testimony concerning the November 5, 1995, murder of Julio Antonio Peña ("Peña"), as described in the amended complaint in Case No. 09-1835 (FAB/MEL):

> On November 2, 1997, in [**ZOÉ**] **DIAZ-COLON'S** presence, [**JOSÉ LUIS DÍAZ-COLÓN**], **Merced**, **Rivera**, **ORTIZ** and **Martinez** talked about killing **Peña** for $700.

> On November 5, 1997, at 10:00 a.m., [**ZOÉ**] **DIAZ-COLON** saw [**JOSÉ LUIS DÍAZ-COLÓN**], **Merced**, **Rivera** and **ORTIZ** in the bar known as "El Negocio de Luisitin" ("Luisitin's Place"), where the murder of **Peña** was planned. Shortly thereafter, [**JOSÉ LUIS DÍAZ-COLÓN**], **Merced, Rivera** and **ORTIZ** got into two automobiles and left the place.

> [**ZOÉ**] **DIAZ-COLON** stayed at Luisitin's Place and the group returned there at 2:30 p.m. Once there, **ORTIZ** told her that he had killed **Peña.** Then, the four assassins described to her how many shots each had fired and in what parts of the body the bullets had impacted **Peña**.

> **ORTIZ** called **Martinez**, by telephone, and told him that they had killed **Peña**.

Docket No. 8, ¶¶ 4.3-4.4, 4.7 (emphasis in original); Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 38.  Zoé Díaz-Colón also gave a sworn statement concerning the murder of Edgard Mariani Cordero ("Mariani"), which had occurred on November 19, 1994.  Docket No. 8, ¶¶ 4.3, 4.9; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 35-36.

---

[7] The amended complaint in Case No. 09-1835 (FAB/MEL) alleges that there was a police station halfway between Colomba's house and Judith's Place.  Docket No. 8, ¶ 4.6.

In the Court of First Instance, Guayama Part ("Guayama Court"), Leopoldo Sanabria-Díaz ("Sanabria"), Orlando Ramos-Félix ("Ramos"), and Carmelo Velázquez Colón ("Velázquez") were charged with weapons law violations, conspiracy, and first-degree murder in connection with the Colomba murder.  Docket No. 8, ¶ 4.12; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 41.  Héctor Julian Merced ("Merced") and Manuel Ortiz-Díaz ("Ortiz") were also charged with weapons law violations, conspiracy, and first-degree murder in connection with the Peña murder.  Docket No. 8, ¶ 4.13; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 40.

During pretrial proceedings in the Peña and Colomba cases, the criminal defendants repeatedly requested from the Commonwealth in discovery all exculpatory evidence, documentary evidence related to witnesses, and contracts or agreements with Zoé Díaz-Colón, none of which was provided before trial.  Docket No. 8, ¶ 4.19; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 42.  At first, the prosecution denied the existence of these documents and did not produce any of them.[8]  Id.  The prosecution, however, produced to the defense the requested police reports and notes on the day of the opening arguments in the Colomba case.  Docket No. 8, ¶ 4.22; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 44.  The prosecution stated that the files were lost, but were subsequently found.[9]  Docket No. 8, ¶¶ 4.22, 4.31; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 44.  These records included "the names of witnesses that were interviewed by the homicide agents and whose statements contradicted the sworn statements of [Zoé Díaz-Colón]."  Docket No. 8, ¶ 4.22; see also Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 44.

---

[8] Specifically, the amended complaint in Case No. 09-1835 (FAB/MEL) alleges that the prosecution denied that Zoé Díaz-Colón was offered immunity at a March 12, 1999, status conference for the Colomba case and at a May 6, 1999, hearing.  Docket No. 8, ¶ 4.19.

[9] The amended complaint in Case No. 09-1835 (FAB/MEL) specifically alleges that Crespo made this statement.  Docket No. 8, ¶ 4.31.

In the Peña case, Merced and Ortiz were convicted of first-degree murder, conspiracy, and weapons law violations.   Docket No. 8, ¶ 4.23; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 40.  They were each sentenced to a term of imprisonment of 110 years on July 16, 1999.  Id.  Sixteen days after his conviction, Ortiz committed suicide in prison.  Docket No. 8, ¶ 4.24; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 46.  In the Colomba case, Sanabria, Ramos, and Valázquez were convicted of first-degree murder, conspiracy, and weapons law violations.  Docket No. 8, ¶ 4.25; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 47.  They were each sentenced to a term of imprisonment of 108 years on September 24, 1999.  Id.  In both cases, Zoé Díaz-Colón was the only witness who placed the criminal defendants at the crime scene and that identified them as the perpetrators.  Docket No. 8, ¶ 4.26; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 45, 47.

Zoé Díaz-Colón, however, provided yet another sworn statement on May 5, 2001, which contained the following facts, as described in the amended complaint in Case No. 09-1835 (FAB/MEL):

> The sworn statements [**ZOÉ**] **DIAZ-COLON** gave at the Guayama District Attorney Offices are false because she never witnessed nor had personal knowledge whatsoever of the murders of **Peña, Colomba** and **Mariani**.

> [**ZOÉ**] **DIAZ-COLON** gave these statements under pressure exerted upon her by agents **BAEZ** and [**JESÚS FIGUEROA CRUZ**]. Also, prosecutors **CRESPO** and **REDONDO** offered her a house, money in cash in each of the cases, and an asthma therapy machine and promised her that efforts would be made to recover the custody of her children from her mother-in-law, the father being one of the criminal defendants, **RAMOS.**

> [**ZOÉ**] **DIAZ-COLON** had learned of the suicide of **ORTIZ** while he was incarcerated (who ended up convicted in one of the cases where she testified), causing her to feel remorse that led her to a suicide attempt.

> [**ZOÉ**] **DIAZ-COLON** explained that after 10 review sessions where the police officers would show her photographs of the innocent criminal defendants, would take her to the scenes of the crimes and recreate the murders, and would

> show her diagrams reflecting the positions of the corpses, she was able to memorize scripted testimony, which she finally provided to the prosecutors.

Docket No. 8, ¶ 4.28 (emphasis in original); Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 48-50, 52.[10]  Through Zoé Díaz-Colón's May 5, 2001, sworn statement, the defense learned that she was a paid informant and under contract with the CIC since August 2, 1995.  Docket No. 8, ¶ 4.29; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 51.  The defense also learned that Zoé Díaz-Colón was paid for the information provided in her earlier sworn statements.  Id.

A motion for a new trial was filed in the Guayama Court.  Docket No. 8, ¶ 4.30; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 52.  The trial court denied the motion.  Docket No. 8, ¶ 4.31; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 52.  On May 18, 2003, Sanabria committed suicide in prison.  Docket No. 8, ¶ 4.32; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 53.  The Puerto Rico Supreme Court, on appeal, reversed the Guayama Court and ordered a new trial on the grounds that the prosecution impermissibly withheld critical impeachment evidence.  Docket No. 8, ¶ 4.33; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 54.  The Guayama Court dismissed all criminal charges against Merced, Ortiz, Sanabria, Ramos, and Velázquez in February of 2009.  Docket No. 8, ¶ 4.34; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 55.[11]

### B.    Additional Facts Alleged in Amended Complaint in Case No. 09-1835 (FAB/MEL)

Two persons whom Zoé Díaz-Colón accused with respect to the Peña murder were not present in this jurisdiction at some point where she alleged they participated.  Domingo Martínez ("Martínez") was not present when the murder was allegedly planned.  Docket No. 8, ¶ 4.14.

---

[10] The complaint in Case No. 10-1097 (FAB/MEL) also alleges that after Ortiz committed suicide but before her May 5, 2001, statement, Zoé Díaz-Colón attempted to commit suicide.  Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 48.

[11] Specifically, the complaint in Case No. 10-1097 (FAB/MEL) alleges that the prosecution requested dismissal. Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 55.

Aneudi Rivera ("Rivera") was not present when the murder occurred.  Id. ¶ 4.15.  On January 22, 1999, Zoé Díaz-Colón gave another sworn statement to prosecutors investigating the Peña murder.  Id. ¶ 4.8.  She claimed that José Manuel Luna ("Luna") was another participant in Peña's murder, but she did not include Luna in her earlier statement because he had threatened to kill her if she spoke of Peña's death.  Id.  Rivera, Martínez, and Luna were charged along with the other defendants.  Id. ¶ 4.13.

Rivera returned to this jurisdiction to face the criminal charges against him in the Peña case.  Id. ¶ 4.16.  Rivera's attorney told Crespo, a district attorney, that, during time of the planning, commissioning, and execution of Peña, Rivera was in Rochester, New York, and gainfully employed by Park Systems of New York.  Id. ¶¶ 4.17-4.18.  Crespo stated that he would not continue the prosecution against Rivera, but the charges were never dropped.  Id. ¶ 4.18.

At a status conference in the Peña case on March 8, 1999, the trial judge, defense counsel, and Capó discussed the prosecution's case.  Id. ¶ 4.20.  Capó "manifested that prosecutor [José Figueroa] insisted in not dismissing the criminal charges."  Id.

José Figueroa, under instruction from Capó, presented in Guayama Court Zoé Díaz-Colón's sworn statements in all three cases.  Id. ¶ 4.10.  Thereafter, a magistrate judge issued arrest warrants.  Id.  But at the preliminary hearings for the Peña and Mariani murder cases, the magistrate judge did not find probable cause to charge Luna and Pablo Torres ("Torres").  Id. ¶ 4.11.  In the Mariani case, Jorge Vives ("Vives") was acquitted of all charges on April 3, 2001.  Id. ¶ 4.27.  Zoé Díaz-Colón had implicated Torres and Vives in the Mariani murder.  Docket No. 8, ¶¶ 4.3, 4.9.

The motion for a new trial included, in addition to Zoé Díaz-Colón's statement, a June 28, 2001, sworn statement by Jorge Díaz-Rivera ("Díaz-Rivera"), an agent who was assigned to the vice and narcotics units in the Guayama area.  Id. ¶ 4.30.  Díaz-Rivera's statement contained the following testimony, as described in the amended complaint:

> Diaz-Rivera had known [ZOÉ] DIAZ-COLON since she was a child.
>
> By the time she was 20 or 21 years old, [ZOÉ] DIAZ-COLON provided information on alleged criminal activity in the area which, after being corroborated, consisted in mere "fantasies" of [ZOÉ] DIAZ-COLON.
>
> [ZOÉ] DIAZ-COLON attempted to provide similar information to another agent assigned to an F.B.I., task force, who simply ignored her overtures because of her lack of credibility.
>
> Upon learning that BAEZ was proceeding against Velazquez only on the basis of [ZOÉ] DIAZ-COLON'S testimony, Diaz-Rivera advised BAEZ that they were all going to eventually look like fools.
>
> In the opinion of Diaz-Rivera, [ZOÉ] DIAZ-COLON was a person with diminished mental capacity.

Id. (emphasis in original).  At the hearing on the motion, "the paymaster officer in charge of paying informants" stated that a prosecutor required him to provide a copy of the contract with Zoé Díaz-Colón for the Colomba case and that he had actually done so.  Id. ¶ 4.31.  Báez testified that the police files had always been available at the CIC and were never lost.  Id.

José Luis Díaz-Colón was also charged and convicted of first-degree murder, conspiracy, and weapons law violations in connection with the Peña murder.  Id. ¶¶ 4.13, 4.23.  Charges against José Luis Díaz-Colón were also dismissed in February of 2009.  Id. ¶ 4.34.

## III.  STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must limit its focus to the allegations of the complaint.  Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978).  The inquiry is whether the allegations, accepted as true, show "a

plausible entitlement" to the relief requested.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007).  To avoid dismissal, a plaintiff must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).

Determining whether a complaint makes out a plausible entitlement to relief involves two steps.  See Ocasio Hernández v. Fortuño Burset, 640 F.3d 1, 11-12 (1st Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  First, the court should separate a complaint's factual allegations from any "legal conclusions couched as fact or threadbare recitals of the elements of a cause of action," and disregard the latter.  Id. at 12 (quoting Iqbal, 556 U.S. at 678) (internal quotations omitted).  The court then treats non-conclusory factual allegations as true, "even if seemingly incredible."  Id.  Second, the court must determine if the factual content, taken as a whole, admits of "the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  (quoting Iqbal, 556 U.S. at 678).  Only if it does will the complaint survive a motion to dismiss under Rule 12(b)(6).

IV.   ANALYSIS

A.   **Eleventh Amendment Immunity**

Defendants argue that they may have been sued in their official capacities.  Docket No. 123, at 34.  In both the amended complaint of Case No. 09-1835 and the complaint of Case No. 10-1097, however, plaintiffs specified that each of the moving defendants was being sued in their individual capacities.  Docket No. 8, ¶¶ 7-8; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 6-7.  Thus, there is no Eleventh Amendment issue.  See, e.g., Kentucky v. Graham, 473 U.S. 159 (1985).

### B.   Standing

Defendants also broadly argue that "claims brought by the adjudged plaintiffs' array of relatives … are meritless" because relatives of victims of constitutional violations do not have standing under Section 1983.  Docket No. 123, at 21.  But the only federal causes of action brought by a relative of an alleged victim of a constitutional violation are on behalf of the *heirs* of Ortiz and Sanabria.[12]  Specifically, these causes of action are the sixth cause of action listed in the amended complaint of Case No. 09-1835, and the tenth and thirteenth causes of action listed in the complaint of Case No. 10-1097.  Docket No. 8, ¶¶ 23-24; Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 21-22, 24-25.  Because Sanabria and Ortiz are now deceased, their estates have brought their causes of action.  Section 1983 itself does not indicate whether an action survives the death of a plaintiff.    Thus, this question is governed by Section 1988, which provides that the survivorship issue is determined by state law—the law of Puerto Rico.  See Rivera v. Medina, 963 F. Supp. 78, 84 (D.P.R. 1997) (citing Robertson v. Wegmann, 436 U.S. 584 (1978)).  Puerto Rico provides for the survivorship of tort actions.  Widow of Delgado v. Boston Ins., 1 P.R. Offic. Trans. 823 (1973); see also Rivera, 963 F. Supp. at 84 ("Case law indicates that § 1983 actions based on deprivation of life without due process of law under the Fourteenth Amendment are inheritable under Puerto Rico law.").  As a result, Sanabria's and Ortiz's heirs inherited their rights to bring causes of action under Section 1983 as well. Therefore, it was proper for Sanabria's and Ortiz's heirs to bring these causes of action.

### C.   Statute of Limitations

Both sets of parties agree that the Section 1983 statute of limitations period for this case is one year, borrowed from the Puerto Rico period for personal injury actions.  Docket No. 123,

---

[12] The other causes of action brought by a victim's relative arise under Puerto Rico law, not Section 1983.  Thus, defendants' arguments regarding standing under Section 1983 are inapplicable to those causes of action.

at 9-10; Docket No. 124, at 7; <u>see also</u> <u>Chevere-Rodríguez v. Pagán</u>, 114 F. App'x 412, 414 (1st Cir. 2004).  The limitations clock begins the day following the date of accrual.  <u>Id.</u>  The accrual date, however, is determined by federal law.  <u>See</u> <u>Ruiz-Sulsona v. Univ. of Puerto Rico</u>, 334 F.3d 157, 159 (1st Cir. 2003).  Here, plaintiffs and defendants disagree.

Defendants argue that the accrual date was when plaintiffs knew, or had reason to know, of the underlying injury.  Docket No. 123, at 10 (citing <u>Rivera-Muriente v. Agosto-Alicea</u>, 959 F.2d 349, 353 (1st Cir. 1992)).  In contrast, plaintiffs point to "the termination of the antecedent criminal proceedings" for the accrual date of malicious prosecution claims.  Docket No. 124, at 7-8 (citing <u>Nieves v. McSweeney</u>, 241 F.3d 46, 51 (1st Cir. 2001)).  Plaintiffs are correct that a malicious prosecution claim under Section 1983 "does not begin accrue until the criminal proceedings terminate."  <u>Moreno-Medina v. Toledo</u>, 458 F. App'x 4, 6 (1st Cir. 2012) (unpublished); <u>see also</u> <u>Nieves</u>, 241 F.3d at 53 (citing <u>Heck v. Humphrey</u>, 512 U.S. 477, 489-90 (1994) (analogizing a Section 1983 claim for "an unconstitutional conviction or sentence" to a malicious prosecution claim and holding that it "does not accrue until the conviction or sentence has been invalidated")); <u>Chevere-Rodríguez</u>, 114 F. App'x at 414 (citing <u>Smith v. Holtz</u>, 87 F.3d 108, 113 (3d Cir. 1996), for the proposition that "a section 1983 claim in the nature of malicious prosecution does not accrue while there is still a potential for judgment of conviction in the underlying criminal case").  This discrepancy exists, as plaintiffs point out, because the case law which defendants cite refers to the wrong cause of action.  Defendants cite <u>Wallace v. Kato</u>, where the U.S. Supreme Court held that the accrual period began "as soon as the allegedly wrongful arrest occurred," because that was when he could have filed suit; ordinarily, accrual occurs when "the plaintiff can file suit and obtain relief."  549 U.S. 384, 388 (2007) (internal quotation omitted).  But <u>Wallace</u> concerned false imprisonment under Section 1983.  While

malicious prosecution involves "wrongfully instituting legal process," <u>Harrington v. City of</u> <u>Nashua</u>, 610 F.3d 24, 30 (1st Cir. 2010), false imprisonment requires "detention *without legal process*." <u>Wallace</u>, 549 U.S. at 389 (emphasis in original).   An element of malicious prosecution—and not false arrest or false imprisonment—is the termination of the criminal action in plaintiff's favor.  <u>See, e.g.</u>, <u>Barros-Villahermosa v. U.S.</u>, 642 F.3d 56, 58 (1st Cir. 2011).  Plaintiffs could not have brought a malicious prosecution claim under Section 1983 until the termination of the criminal action in their favor—when the Guayama Court dismissed all charges against José Luis Díaz-Colón, Merced, Ortiz, Sanabria, Ramos, and Velázquez. According to the first set of plaintiffs, this occurred on February 2, 2009.  Docket No. 8, ¶ 4.34. Their initial complaint was filed on August 21, 2009, which was within the one-year period. Docket No. 1.  Thus, the limitations period poses no problem for the first set of plaintiffs.

The second set of plaintiffs, however, filed their complaint on February 8, 2010, more than one year after February 2, 2009.  Docket No. 1 in Case No. 10-1097 (FAB/MEL). Nevertheless, according to the complaint in Case No. 10-1097 (FAB/MEL), the Guayama Court's dismissal of all charges took place on February 10, 2009, and the notification of said order occurred on October 1, 2009.  <u>Id.</u> ¶ 55.  Accepting this as true, the complaint of the second set of plaintiffs would not be time-barred.  Defendants provide no evidence—other than citing to the complaint of the first set of plaintiffs—for their contention that the dismissal occurred on February 2, 2009.  Docket No. 123, at 4.  For a Rule 12(b)(6) motion to dismiss, a court is limited to the non-conclusory allegations of the complaint, which it must accept as true.  <u>See</u> <u>Litton Indus., Inc. v. Colón</u>, 587 F.2d 70, 74 (1st Cir. 1978); <u>Ocasio Hernández v. Fortuño</u> <u>Burset</u>, 640 F.3d 1, 11-12 (1st Cir. 2011).  Therefore, defendants' statute of limitations argument should also be rejected concerning the second set of plaintiffs.

D.      **Fourth Amendment Malicious Prosecution Claim**

1.      *Fuentes, Toledo, Solivan, Tirado, Colón, José Figueroa, and Capó*

Plaintiffs' claims against seven of the defendants are insufficient to sustain a Section 1983 claim.  The only allegation the first set of plaintiffs makes with respect to Fuentes, Toledo, Solivan, Tirado, or Colón is conclusory in nature, namely that they "displayed a reckless or callous indifference to the rights of those citizens whom" their subordinate officers or prosecutors encountered.  Docket No. 8, ¶¶ 18-19.  Plaintiffs, however, make no mention of any specific words or conduct of Fuentes, Toledo, Solivan, Tirado, or Colón that would lead the court to conclude that they met this standard.  Thus, plaintiffs' allegation is an impermissible "formulaic recitation of the elements of a cause of action."  Iqbal, 556 U.S. at 678 (internal quotation omitted).  Similarly, the second set of plaintiffs merely asserts that these defendants either gave their "acquiescence" or provided a "lack of supervision," and "displayed a reckless or callous indifference to the rights of [plaintiffs]."   Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 7, 13.   These are threadbare conclusory assertions unsupported by any other facts in the complaints.

Plaintiffs, however, do make specific factual allegations involving Capó and José Figueroa.  The specific, non-conclusory allegations pertaining to Capó, taken from the alleged complaint in Case No. 09-1835 (FAB/MEL) are: (1) Capó and a co-defendant police officer at one point "discussed … the testimony proffered by [Zoé Díaz-Colón]"; (2) "[Capó] ordered subordinate prosecutor defendants to take her statements under oath and to file criminal charges against the purported murderers"; (3) Capó gave orders to José Figueroa to present Zoé Díaz-Colón's statements in the Guayama Court; and (4) Capó "manifested that [José Figueroa] insisted in not dismissing the criminal charges" in a "status conference held before the Guayama Court" on March 8, 1999.  Docket No. 8, ¶¶ 4.2, 4.10, 4.20.  The specific, non-conclusory

allegations pertaining to José Figueroa are: (1) José Figueroa took the sworn statements from Zoé Díaz-Colón on June 11, 1998; (2) José Figueroa received and subsequently followed orders from Capó to present Zoé Díaz-Colón's statements in the Guayama Court; and (3) "[José Figueroa] insisted in not dismissing the criminal charges" on or before March 8, 1999.  Id. ¶¶ 4.3-4.4, 4.10, 4.20.

An element of malicious prosecution in Puerto Rico is that the defendant must have "acted with malice," which is equivalent here to bad faith.  Barros-Villahermosa v. U.S., 642 F.3d 56, 58 (1st Cir. 2011).  Taking each set of specific allegations in its entirety, neither one establishes the existence of or allows for a reasonable inference of bad faith on the part of either Capó or José Figueroa, even assuming that other co-defendants acted in bad faith.  Plaintiffs' primary source of evidence of bad faith, Zoé Díaz-Colón's "sworn statement … recant[ing] her testimonies" makes no mention of either José Figueroa or Capó, nor do plaintiffs allege specifically at any point any facts demonstrating that either one acted with malice at any point. Docket No. 8, ¶ 4.28.  The heart of plaintiffs' claims is that defendants "fabricated evidence and induced and threatened a paid informant to provide false testimony," leading eventually to convictions of innocent individuals.  Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 4.  The allegations set forth against José Figueroa and Capó do not establish a connection between those two defendants and the *fabrication* of evidence and improper *inducement* of testimony.

Plaintiffs also allege that the prosecution did not provide the defense with "the names of witnesses that were interviewed by the homicide agents and whose statements contradicted the sworn statements of … the only witness that placed the criminal defendants at the crime scene and that identified them as the perpetrators" until "[t]he day of the opening arguments in the Colomba Case."  Docket No. 8, ¶¶ 4.22, 4.26.  Although the prosecution claimed that the files

16

had been temporarily lost, Báez stated that the police files were never missing.  Id. ¶ 4.31.

Furthermore, the prosecution did not disclose that Zoé Díaz-Colón was a paid informant under

contract with the CIC; the defense was not informed of this until May 5, 2001.  Id. ¶ 4.29.

Allegations of knowingly withholding exculpatory or impeachment information are not taken

lightly.  See, e.g., United States v. Lemmerer, 277 F.3d 579, 584 (1st Cir. 2002) (“‘[S]uppression

by the prosecution of evidence favorable to an accused upon request violates due process ….’

[Defendant]’s claim is based on the well-established extension of that rule prohibiting

unwarranted delays in the disclosure of material evidence.” (quoting Brady v. Maryland, 373

U.S. 83, 87 (1963))).  Plaintiffs, however, are unable to establish a link between Capó and José

Figueroa and the failure to disclose.[13]  The first set of plaintiffs specifically states that Crespo,

not Capó or José Figueroa, was the prosecutor who told the court that the documents had been

lost and subsequently found.  Docket No. 8, ¶ 4.31.  Crespo and Redondo, not Capó or José

Figueroa, were the prosecutors who were alleged to have offered Zoé Díaz-Colón a house, cash,

an asthma therapy machine, and promises about the custody of her children.  Id. ¶ 4.28.

Plaintiffs have not even alleged that Capó or José Figueroa were aware that such documents

existed or that Zoé Díaz-Colón was a paid informant.  Without any non-conclusory allegations to

connect José Figueroa or Capó to the failure to disclose, plaintiffs cannot establish a plausible

entitlement to the relief requested with respect to these two defendants.

Plaintiffs argue that they need only plead enough facts to “‘raise a reasonable expectation

that discovery will reveal evidence of the illegal [conduct].’”  Docket No. 124, at 6 (quoting

Twombly, 550 U.S. at 556).  But plaintiffs have not met this standard.  For five of the seven

---

[13] Plaintiffs allege that “the prosecutor defendants knowingly withheld exculpatory evidence which exonerated these criminal defendants from the charges they were facing in the Peña and Colomba Cases.”  Docket No. 8, ¶ 4.35; see also Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 56.  This, however, is a conclusory allegation; plaintiffs offer no factual allegations to support it.

plaintiffs, the only inference of involvement that one can make is that they were police officers or prosecutors with supervisory powers over the allegedly involved defendants.   For José Figueroa, one can also infer that he was involved in taking the main witness's sworn testimony— after she worked extensively with unspecified police officers and prosecutors—and participated in the prosecution of José Luis Díaz-Colón, Merced, Ortiz, Sanabria, Ramos, and Velázquez. For Capó, plaintiffs provide no reason to infer that his discussions or instructions pertaining to Zoé Díaz-Colón involved any knowledge of misconduct.   A plaintiff's factual allegations must demonstrate a "right to relief above the speculative level."   Twombly, 550 U.S. at 555 (2007). Only with pure speculation can one conclude that any of these seven defendants was knowingly involved with the alleged misconduct.

Nor can liability attach to any of these defendants under a theory of supervisory liability. First, respondeat superior is an inappropriate theory of liability under Section 1983, which plaintiffs admit.  See Rodríguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 41 (1st Cir. 2012) ("Liability under Section 1983 cannot rest solely on a defendant's position of authority.") (internal quotation omitted); Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011), cert. denied, 132 S. Ct. 2742, 183 L. Ed. 2d 615 (U.S. 2012); Docket No. 124, at 15. Because "Section 1983 does not impose purely supervisory liability," only "persons who have actually abused their positions of authority … may be held liable."   Cordero-Suárez v. Rodríguez, 689 F.3d 77, 82 (1st Cir. 2012) (internal quotation omitted).  In other words, Section 1983 only applies to "persons who were directly involved in the wrongdoing."   Id.   As defendants argue in their supplemental motion, there is no supervisory liability "unless there is an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor … such that the supervisor's conduct led inexorably to the constitutional violation."

Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011) (internal quotation omitted); Docket No. 129, at 4. As discussed earlier, plaintiff's allegations are insufficient to demonstrate that any of these six supervisory defendants[14] were "directly involved in the alleged wrongdoing," Cordero-Suárez, 689 F.3d at 82, or that there was "an affirmative link between the behavior of [the other co-defendants] and the action or inaction of [these six defendants]," Soto-Torres, 654 F.3d at 158. There are insufficient facts to sustain causes of action against Fuentes, Toledo, Solivan, Tirado, Colón, José Figueroa, and Capó.

### 2.    Báez, Jesús Figueroa Cruz, and Redondo

Whether a malicious prosecution claim would also constitute a violation of the Fourth Amendment has not yet been decided conclusively by either the U.S. Supreme Court or the First Circuit. The First Circuit, however, has "assume[d], without deciding, that malicious prosecution can embody a Fourth Amendment violation and, thus, ground a cause of action under section 1983."[15] Moreno-Medina v. Toledo, 458 F. App'x 4, 7 (1st Cir. 2012) (unpublished) (internal quotation omitted); see also, e.g., Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010); Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001); Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996).

A malicious prosecution claim under Section 1983 requires a plaintiff to "establish the elements of malicious prosecution under state law and the deprivation of a federal constitutional right." Medina v. Toledo, 718 F. Supp. 2d 194, 206 (D.P.R. 2010), aff'd sub nom. Moreno-Medina v. Toledo, 458 F. App'x 4 (1st Cir. 2012). Under Puerto Rico law, a plaintiff must prove four elements to establish a malicious prosecution claim: "1) that a criminal action was initiated

---

[14] Plaintiffs do not allege in the complaints that José Figueroa has supervisory authority.

[15] Furthermore, the First Circuit also noted that the eight circuits which considered the issue decided that it did constitute a Fourth Amendment violation. Britton v. Maloney, 196 F.3d 24, 28 n.3 (1st Cir. 1999).

or instigated by the defendants; 2) that the criminal action terminated in favor of plaintiff; 3) that defendants acted with malice and without probable cause; and 4) that plaintiff suffered damages." Barros-Villahermosa v. United States, 642 F.3d 56, 58 (1st Cir. 2011) (internal quotation omitted). As discussed supra Part IV(D)(1), malice in the third prong is equivalent to bad faith. Id. at 59.

Here, plaintiffs have established that a criminal action was initiated or instigated by the defendants in a court of Puerto Rico. The action was eventually terminated in favor of plaintiffs when the Guayama Court dismissed all charges. Thus, plaintiffs have established the first two prongs of a Puerto Rico malicious prosecution claim.

The next question is whether the factual allegations demonstrate that defendants acted with malice or bad faith and without probable cause. The remaining moving defendants are Báez, Jesús Figueroa Cruz, and Redondo. Plaintiffs allege that: (1) "[p]rosecutors and … [p]olice [o]fficers … fabricated evidence and induced and threatened a paid informant to provide false testimony," leading eventually to convictions of innocent individuals, Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶ 4; (2) Zoé Díaz-Colón's statements were provided "under pressure" from Báez and Jesús Figueroa Cruz, Docket No. 8, ¶ 4.28(b); (3) Redondo, along with Crespo, offered her a house, cash, and an asthma therapy machine and made promises about the custody of her children, id.; and (4) Zoé Díaz-Colón participated in ten sessions with police officers to review photographs of plaintiffs, to visit the scenes of the crimes and recreate the murders, to review diagrams indicating the positions of the corpses, and to memorize prepared testimony, id. ¶ 4.28(d). It is plausible from these allegations that Báez, Jesús Figueroa Cruz, and Redondo generated false testimony, exerted sufficient pressure on Zoé Díaz-Colón to provide the false statements, worked extensively with her to ensure that she knew and remembered this false

testimony, and brought criminal charges based on this false testimony.  Thus, taking these factual allegations as true would reasonably imply that defendants acted in bad faith and without probable cause.

Plaintiffs allege that, because of defendants' actions, most of them were wrongfully imprisoned for almost ten years, establishing the final prong.[16]  Therefore, plaintiffs have alleged sufficient facts for a claim of malicious prosecution under Puerto Rico law against Báez, Jesús Figueroa Cruz, and Redondo.

To establish a malicious prosecution claim under the Fourth Amendment, a Section 1983 plaintiff also "must 'show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure.'"  Moreno-Medina, 458 F. App'x at 7 (quoting Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010)).  This deprivation typically "takes 'the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure).'"  Id. (quoting Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001)).  Here, plaintiffs certainly demonstrated such a deprivation of liberty.  Before their charges were dropped, plaintiffs were incarcerated—most for almost ten years—as a result of their conviction on the basis of allegedly false testimony.  See Rivera v. Díaz, CIV.A. 09-1919 (GAG), 2010 WL 1542191, at *7 (D.P.R. Apr. 15, 2010) (holding that pretrial detention and subsequent incarceration for eight months constituted a deprivation of liberty for a Section 1983 malicious prosecution claim); Rodríguez-Esteras v. Solivan-Díaz, 266 F. Supp. 2d 270, 280 (D.P.R. 2003) ("Plaintiff's post-arraignment detention placed definitive restrictions on his liberty ….").

---

[16] Sanabria and Ortiz were imprisoned for, respectively, almost seven years and an unspecified length of time. Docket No. 1 in Case No. 10-1097 (FAB/MEL), ¶¶ 102, 114.

Plaintiffs have alleged facts sufficient to state a claim for malicious prosecution under the Fourth Amendment.

###    E.    Conspiracy

Defendants also argue that plaintiffs fail to state a valid claim for conspiracy under Section 1983,[17] because the only fact linking the defendants is that some of them worked on the case together.   Docket No. 123, at 25.   "In order to make out an actionable conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right."   Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).   In order words, a civil rights conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."   Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (internal quotations omitted).   In addition to the agreement, there must be "an actual deprivation of a right secured by the Constitution and laws."   Id. (internal quotation omitted).

As discussed earlier, plaintiffs have alleged an actual deprivation of a constitutional right. See discussion supra Part IV(D)(2).   Plaintiff's allegations are also sufficient to establish the existence of a civil rights conspiracy involving Báez, Jesús Figueroa Cruz, and Redondo.[18]   As plaintiffs note, they need not prove an express agreement to prove a conspiracy.   Earle, 850 F.2d at 845.   Plaintiffs can use either direct or circumstantial evidence to meet their burden.   Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (citing Earle, 850 F.2d at 845).   Here, plaintiffs have alleged that Báez and Jesús Figueroa Cruz exerted pressure on Zoé Díaz-Colón,

---

[17] Defendants cite to Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996), but that case addresses enumerated conspiracies under 42 U.S.C. § 1985(3), not conspiracy under Section 1983.
[18] As discussed supra Part IV(D)(1), plaintiffs have alleged facts insufficient to reasonably infer that the other seven moving defendants participated in the fabrication of evidence and improper inducement of testimony, the subject of the alleged conspiracy.

and Redondo offered her various incentives, to provide testimony.  Plaintiffs have also alleged that, over the course of ten sessions with police officers, Zoé Díaz-Colón "was provided all the details of each respective murder, shown photos, taken to the respective scenes and schooled as to the testimony needed to convict the innocent plaintiffs."  Docket No. 1 in Case No. 09-1097 (FAB/MEL).  These three co-defendants in particular each allegedly pressured Zoé Díaz-Colón to provide false testimony about murders of which she had no personal knowledge.  These allegations imply a level of coordination among Báez, Jesús Figueroa Cruz, and Redondo, constituting sufficient circumstantial evidence to establish that there was an agreement among them to inflict a wrong against or injury upon plaintiffs.  Furthermore, their acts of pressuring Zoé Díaz-Colón were overt acts in the furtherance of the conspiracy that resulted in damages.[19] Therefore, plaintiffs have stated sufficient facts to sustain a claim of conspiracy under Section 1983.

### F.      Absolute Immunity

Actions taken as an advocate of the state provide a prosecutor with absolute immunity, while actions as an investigator provide only qualified immunity.  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  The only remaining defendant who is also a prosecutor is Redondo, who was one of the interviewers identified by Zoé Díaz-Colón in her May 5, 2001, sworn statement. Redondo's alleged inducement of a witness to provide testimony before any of the plaintiffs in these cases had been arrested constituted investigatory work protected only by qualified immunity.  Furthermore, plaintiffs allege that Redondo fabricated evidence leading to plaintiffs' arrest.  "[A] prosecutor's fabrication of false evidence during the preliminary investigation of an unsolved crime … remains protected only by qualified immunity."  Id. at 275.

---

[19] For instance, plaintiffs were incarcerated for almost ten years as a result of these alleged actions.

Defendant prosecutors claim that they are being sued "for their alleged performance during the process of the criminal cases." Docket No. 123, at 29. But this is not the basis for plaintiffs' malicious prosecution claim. Plaintiffs' claim rests on the allegations that Redondo, along with his co-defendants, fabricated evidence before arresting or bringing charges against plaintiffs. Thus, Redondo is not entitled to absolute prosecutorial immunity.

### G.      Qualified Immunity

The three remaining moving defendants are not entitled to qualified immunity in this case. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a two-part inquiry. "First, a court must decide whether the facts that a plaintiff has alleged … or shown … make out a violation of a constitutional right.… Second, … the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009). In support of their argument that they are entitled to qualified immunity, defendants merely state that they "acted within the law," they "perform[ed] their duties as established by the Puerto Rico Criminal Code and law at that time," and "all the evidence pointed to the Adjudged Plaintiffs." Docket No. 123, at 32.

As mentioned earlier, in the First Circuit, it is unsettled—and, more importantly, was unsettled in 1999—whether a malicious prosecution claim also falls under the Fourth Amendment. But as plaintiffs point out, every circuit which considered the question since Albright v. Oliver, 510 U.S. 266 (1994),[20] concluded that it does. See Britton v. Maloney, 196

---

[20] In Albright, "a plurality of the Supreme Court … concluded that the Due Process Clause of the Fourteenth Amendment does not provide a substantive right to be free from criminal prosecutions unsupported by probable

F.3d 24, 28 n.3 (1st Cir. 1999) (citing eight circuits[21]).  Simply because there is no binding authority in either direction does not imply that the constitutional right was not clearly established for qualified immunity purposes.  "[A] constitutional right is clearly established if 'a consensus of persuasive authority' exists 'such that a reasonable officer could not have believed that his actions were lawful.'"  Maldonado v. Fontanes, 568 F.3d 263, 271 (1st Cir. 2009) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)).  In Maldonado, the First Circuit found that the law in question was clearly established where three circuits agreed before the alleged actions occurred, one circuit agreed subsequently, and no circuit had held otherwise.  There is a similar consensus of persuasive authority here.  Defendants are not entitled to qualified immunity in this case.

### H.    Supplemental Jurisdiction

Plaintiffs have also asserted causes of action under Puerto Rico law against defendants. Defendants request that these causes of action should be dismissed to the extent "that no federal foundational claim exists."  Docket No. 123, at 33.  Because the federal causes of action against Fuentes, Toledo, Solivan, Tirado, Colón, José Figueroa, and Capó should be dismissed, the Puerto Rico law claims pendent to those causes of action should be dismissed as well.  The Puerto Law causes of action against Báez, Jesús Figueroa Cruz, and Redondo, however, should not be dismissed.

## V.   CONCLUSION

Based on the foregoing analysis, it is recommended that defendants' motion to dismiss (Docket No. 123) be **GRANTED IN PART** and **DENIED IN PART**.  With respect to José

---

cause," but "the Court … 'express[ed] no view' as to whether the burden of baseless criminal charges might effect an unlawful 'seizure' and thereby trigger a Fourth Amendment claim."  Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999) (quoting Albright, 510 U.S. at 274-75).

[21] Five of these opinions were published before June 11, 1998, the date Zoé Díaz-Colón gave her sworn statements implicating plaintiffs.

Fuentes-Agostini, Pedro Toledo-Dávila, Aníbal Solivan Solivan, Daniel Colón, and José Capó, all federal claims should be **DISMISSED WITH PREJUDICE**, and all state claims should be **DISMISSED WITHOUT PREJUDICE**. With respect to Héctor Tirado and José Figueroa, in Case No. 10-1097 (FAB/MEL), all federal claims should be **DISMISSED WITH PREJUDICE**, and all state claims should be **DISMISSED WITHOUT PREJUDICE**. In Case No. 09-1835 (FAB/MEL), however, no such recommendation is made, as Héctor Tirado and José Figueroa are in default. With respect to Francisco Báez-Quiñones, Jesús Figueroa Cruz, and Gabriel Redondo, the motion should be **GRANTED IN PART** and **DENIED IN PART**. All Section 1983 claims directly under the Fourteenth Amendment should be **DISMISSED WITH PREJUDICE**, but not claims under the Fourth Amendment. The court should exercise supplemental jurisdiction for the state claims against Francisco Báez-Quiñones, Jesús Figueroa Cruz, and Gabriel Redondo. It is also recommended that pretrial conference and trial be scheduled,[22] since the deadlines for the conclusion of discovery and filing of dispositive motions have expired.[23]

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); Local Rule 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

---

[22] It is also respectfully recommended that, if defendants have evidence that the dates of the Guayama Court's dismissal of charges and notification are actually not those alleged by the second set of plaintiffs in Case No. 10-1097 (FAB/MEL), the issue of statute of limitations in that case be entertained at the pretrial conference.

[23] The deadlines for conclusion of discovery and filing of dispositive motions expired on November 15, 2011, and December 20, 2011, respectively. Docket Nos. 97; 107; 128; 139. Although the court granted a motion by José Figueroa, Redondo, Fuentes, and Toledo for extension of time until January 30, 2012, to comply with certain discovery requests, it denied plaintiffs' and certain defendants' motions for extension of time until April 30, 2012, to conclude discovery and file dispositive motions. Docket Nos. 146; 147; 148; 149; 150; 151.

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 16th day of November, 2012.

s/Marcos E. López
U.S. Magistrate Judge