## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSE LUIS DIAZ-COLON, *et al.*,

**Plaintiffs,**

v.

PEDRO TOLEDO-DAVILA, *et al.*,

**Defendants.**

**CIVIL NO.** 09-1835 (FAB/MEL)

CARMELO VELAZQUEZ-COLON, *et al.*,

**Plaintiffs,**

v.

JOSE FUENTES-AGOSTINI, *et al.*,

**Defendants.**

**CIVIL NO.** 10-1097 (FAB/MEL)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is Magistrate Judge Marcos E. Lopez's Report and Recommendation ("R&R"), (Docket No. 155), concerning defendants' motion to dismiss, (Docket No. 123), and their supplement to motion to dismiss, (Docket No. 129). The magistrate judge recommends that all federal claims against defendants Jose Fuentes-Agostini, Pedro Toledo-Davila, Anibal Solivan-Solivan, Daniel Colon, and Jose Capo be **DISMISSED WITH PREJUDICE** and all state claims against them be **DISMISSED WITHOUT PREJUDICE.** The magistrate judge also recommends that all federal claims against defendants Hector Tirado and Jose Figueroa be **DISMISSED WITH**

**PREJUDICE,** and all state claims be **DISMISSED WITHOUT PREJUDICE** with respect to them in <u>Velazquez-Colon v. Fuentes-Agostini</u> in Civil Case No. 10-1097 (D.P.R. filed Feb. 8, 2010). No dismissal is recommended for defendants Tirado and Figueroa with respect to <u>Diaz-Colon v. Toledo-Davila</u>, Civil No. 09-1835 (D.P.R. filed Aug. 21, 2009), because they are in default in that case. The magistrate judge also recommends that only the 42 U.S.C. §§ 1983, 1988 claims against defendants Francisco Baez-Quiñones, Jesus Figueroa-Cruz and Gabriel Redondo under the Fourteenth Amendment should be **DISMISSED WITH PREJUDICE,** but not the claims under the Fourth Amendment or the state claims, over which the Court has supplemental jurisdiction. Having considered the plaintiffs' response to the supplemental motion to dismiss filed in <u>Velazquez-Colon v. Fuentes-Agostini</u>, Civil Case No. 10-1097, the magistrate judge's recommendations, (Docket No. 155), the defendants' objections to the R&R, (Docket No. 161), the plaintiffs' opposition to the defendants' objections, (Docket No. 166), and the defendants' reply to the plaintiffs' opposition, (Docket No. 169), the Court **ADOPTS IN PART** and **REJECTS IN PART** the findings and recommendations of the magistrate judge.

## DISCUSSION

## I.   Procedural Background

On August 21, 2009, the plaintiffs[1] filed a complaint against the defendants[2] for violations of the Fourth and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. §§ 1983, 1988 ("section 1983" and "section 1988"), and claims arising under article II, sections 7, 8, and 10 of the Constitution of the Commonwealth of Puerto Rico, and Articles 1802 and 1083 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142 (2012).   (Docket No. 1.)   The first set of plaintiffs filed an amended complaint on November 9, 2009.   (Docket No. 8.)   In a

---

[1] The first set of plaintiffs in this case are Jose Luis Diaz-Colon, on his own behalf and on behalf of his minor son, J.L.D.R.; Linda Delgado, on behalf of her minor daughter, D.M.D.D.; Zoraida Colon-Cartagena; Pedro Diaz; Pedro Luis Diaz-Colon; Yahaira Enid Diaz-Colon; the Estate of Leopoldo Sanabria-Diaz, comprised of his minor children, J.L.S.D., J.L.L.S.D, and L.S.D.; Alberta Diaz-Carballo; Leonardo Sanabria-Diaz; Jennifer Piris-Jusino, on her own behalf and on behalf of her minor daughter, G.R.P.; and Lucy Guzman-Borrero ("first set of plaintiffs").

[2] The defendants in this case are Pedro Toledo-Davila ("Toledo"), Anibal Solivan-Solivan ("Solivan"), Hector Tirado ("Tirado"), Daniel Colon ("Colon"), Francisco Baez-Quiñones ("Baez"), Jesus Figueroa-Cruz ("Figueroa-Cruz"), Jose Fuentes-Agostini ("Fuentes"), the Estate of Ulpiano Crespo ("Crespo"), Gabriel Redondo ("Redondo"), Jose Figueroa ("Figueroa"), Jose Capo ("Capo"), and Zoe Diaz-Colon ("Diaz-Colon").

separate case, a second set of plaintiffs[3] filed a complaint on February 8, 2010 against the same twelve individuals who are defendants in the 2009 case for violations of the Fourth, Eighth, and Fourteenth Amendments pursuant to sections 1983 and 1988 and claims arising under the same provisions of Puerto Rico law.[4] Complaint, Velazquez-Colon v. Fuentes-Agostini, Civil Case No. 10-1097 (D.P.R. filed Feb. 8, 2010).[5] The two cases were consolidated on September 1, 2010. (Docket No. 54.)  In both cases, the plaintiffs voluntarily dismissed their Fourteenth Amendment Due Process claims as to all defendants. (Docket No. 124 at 1 n.1.)

Defendants Colon, Capo, Figueroa, Redondo, Tirado, Fuentes, Toledo, Solivan, Baez, and Figueroa Cruz (collectively, "defendants") filed a motion to dismiss, as well as a supplement to the motion to dismiss. (Docket Nos. 123 & 129.)  All plaintiffs from the consolidated case filed a response in opposition. (Docket

_____

[3] The second set of plaintiffs in this case are Carmelo Velazquez-Colon, Carmelo Colon-Rivera, Orlando Colon-Velazquez, Orlando Ramos-Felix ("Ramos"), Josefa Felix, Jose Antonio Felix, Eliseo Ramos-Felix, Hector Julio Merced-Gomez, Juan Marcos Merced-Gomez, Hector Merced-Rodriguez, Maria E. Gomez-Velazquez, Leopoldo Sanabria-Morales, Maribel Ortiz-Vazquez on behalf of minor J.M.S.O., Ana Luisa Diaz-Rivera, Yolanda Ortiz-Diaz, Evelyn Ortiz-Diaz, Luis Daniel Ortiz-Diaz, Digno Ortiz-Diaz, and Francis I. Lopez-Diaz ("second set of plaintiffs").

[4] Some names and statutes were referred to incorrectly in the complaints, but the Court will only refer to the correct names and statutes. (See Docket 155 at p. 2 nn.1-5 (explaining the errors).)

[5] Hereinafter "Civil Case No. 10-1097."

No. 124.)  On November 16, 2012, Magistrate Judge Lopez issued an

R&R on those motions.  (Docket No. 155.)  On December 10, 2012, the

defendants filed objections to portions of the R&R.  (Docket

No. 161.)  On January 22, 2013, the plaintiffs filed their

opposition to the defendants' objections to the R&R.  (Docket

No. 166.)  Additionally, on January 22, 2013, the plaintiffs filed

a response to the supplemental motion to dismiss in Civil Case

No. 10-1097.[6]  (Civil Case No. 10-1097 at Docket No. 26.)  On

February 4, 2012, the defendants filed a reply in response to the

plaintiff's opposition to defendants objections to portions of R&R.

(Docket No. 169.)

## II.  Factual Background

The Court declines to rehash all of the facts.  Instead, it

provides a brief overview of the facts, and will supply more

details as needed.  At the motion to dismiss stage, Federal Rule of

Civil Procedure 12(b)(6) ("Rule 12(b)(6)") requires the court to

---

[6] In this motion, plaintiffs contend that defendants have not
complied with discovery requests, and, therefore, that the
plaintiffs' request for admissions should be treated as true for
the motion to dismiss. (Civil Case No. 10-1097 at Docket No. 26 at
p. 2 & add. 2.)  At the motion to dismiss stage, however, unless
the Court converts the motion to dismiss to a motion for summary
judgment, the Court considers only the facts alleged in the
complaint. Fed.R.Civ.P. 12; Alt. Energy, Inc. v. St. Paul Fire &
Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  Further, the
Court will not consider a motion to resolve a discovery dispute
until counsel have exhausted attempts to resolve the issue
themselves. See Loc. Rule 26(b).

accept "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his [or her] favor." Medina-Claudio v. Rodriquez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002); see also Fed.R.Civ.P. 12(b)(6).   The factual allegations in the complaints in both cases substantially overlap. (Docket No. 8; Civil Case No. 10-1097 at Docket No. 1.)   The non-conclusory factual allegations are taken as true at the motion to dismiss stage.

Beginning on August 2, 1995, Zoe Diaz-Colon was a confidential informant for the Criminal Investigations Corps of Guayama ("CIC"), which is a Puerto Rico Police Unit.   (Docket No. 8 at ¶ 3.17; Civil Case No. 10-1097 at Docket No. 1 at ¶ 51.)   In May or June 1988, defendant Figueroa-Cruz, a police officer, and defendant Capo, a Puerto Rico District Attorney, discussed Diaz-Colon's testimony regarding several unsolved murders.   (Docket No. 8 at ¶¶ 3.10, 3.15, 4.1-4.2; Civil Case No. 10-1097 at Docket No. 1 at ¶ 33.) Defendant Capo then requested subordinate prosecutors to take Diaz-Colon's statements under oath and file charges against the people identified as murderers.   (Docket No. 8 at ¶ 4.2; Civil Case No. 10-1097 at Docket No. 1 at ¶ 33.)

Diaz-Colon gave several statements under oath to defendant Figueroa in the presence of defendant Baez, a police officer. (Docket No. 8 at ¶¶ 3.10, 4.3; Civil Case No. 10-1097 at Docket

No. 1 at ¶¶ 34-36.)   Her statements provided facts sufficient to find probable cause for murder charges against several individuals in connection with the unrelated murders of Julio Antonio Peña ("the Peña case"), Rafael Colomba-Ortiz ("the Colomba case"), and Edgard Mariani-Cordero ("the Mariani case").   (Docket No. 8 at ¶¶ 3.10, 4.3; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 34-36.) In the Colomba case, Diaz-Colon identified Leopoldo Sanabria-Diaz, Lourdes de Jesus-Velazquez, and Orlando Ramos-Felix as the murderers.   (Docket No. 8 at ¶ 4.5; Civil Case No. 10-1097 at Docket No. 1 at ¶ 39.)   In the Peña case, Diaz-Colon identified Jose Luis Diaz-Colon, Hector Julian Merced, Aneudi Rivera,[7] Domingo Martinez, and Manuel Ortiz-Diaz as the murderers.   (Docket No. 8 at ¶ 4.7; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 34-36, 40.) Diaz-Colon also made a statement in the Mariani case, in which she identified Pablo Torres ("Torres") and Jorge Vives ("Vives") as the murderers.   (Docket No. 8 at ¶ 4.9; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 34-36.)   District Attorney Capo instructed

---

[7] Plaintiff Rivera was living in Rochester, New York, and was not present in Puerto Rico when the Peña murder occurred.  (Docket No. 8 at ¶¶ 4.15-4.17.)   Plaintiff Rivera returned to Puerto Rico when he heard he had been charged, and his attorney showed he was not present in the jurisdiction when the crime occurred.  (Docket No. 8 at ¶¶ 4.16-4.18.)   Defendant District Attorney Crespo said he would not pursue charges against him.  (Docket No. 8 at ¶ 4.18.) The charges against plaintiff Rivera, however, were never dropped. (Docket No. 8 at ¶ 4.18.)

defendant Figueroa to present Diaz-Colon's statements to the Guayama Division of the Court of First Instance of the Commonwealth of Puerto Rico ("Guayama Court"). (Docket No. 8 at ¶ 4.10; Civil No. 10-1097 at Docket No. 1 at ¶ 33.)  The judge issued arrest warrants for everyone implicated in her statements.[8] (Docket No. 8 at ¶ 4.10.)

During pretrial proceedings in the Peña and Colomba cases, the criminal defendants repeatedly requested discovery of all exculpatory evidence, including contracts or agreements with Diaz-Colon. (Docket No. 8 at ¶ 4.19; Civil Case No. 10-1097 at Docket No. 1 at ¶ 42.)  No discovery was provided before trial, and in a status conference in the Colomba case, the prosecution denied that Diaz-Colon had been offered immunity. (Docket No. 8 at ¶ 4.19.) The prosecution in the murder cases first turned over the police reports and notes indicating who had contradicted Diaz-Colon's statements on the day of the opening arguments in the Colomba case. (Docket No. 8 at ¶ 4.22; Civil Case No. 10-1097 at Docket No. 1 at ¶ 44.)  The prosecution told the Court the files had been lost but

---

[8] On January 22, 1999, Diaz-Colon made another sworn statement. She indicated that Jose Manuel Luna ("Luna") was also involved in the Peña murder, but that she did not mention him before because he had threatened to kill her. (Docket No. 8 at ¶ 4.8.)  After the preliminary hearings in the Peña and Mariani cases, the judge did not find probable cause to indict Luna or Torres. (Docket No. 8 at ¶ 4.11.)

were recently located.  (Docket No. 8 at ¶ 4.22; Civil Case No. 10-1097 at Docket No. 1 at ¶ 44.)

Plaintiffs Diaz, Merced, and Ortiz were convicted for Weapons Law Violations, Conspiracy, and Murder in the First Degree in the Peña case, and were each sentenced to 110 years of imprisonment. (Docket No. 8 at ¶ 4.23; Civil Case No. 10-1097 at Docket No. 1 at ¶ 45.)  Plaintiffs Sanabria, Ramos, and Velazquez were convicted of Weapons Law Violations, Conspiracy, and Murder in the First Degree in the Colomba case, and were each sentenced to 108 years of imprisonment.  (Docket No. 8 at ¶ 4.25; Civil Case No. 10-1097 at Docket No. 1 at ¶ 47.)   Vives was acquitted of all charges following a jury trial in the Mariani case.  (Docket No. 8 at ¶ 4.25.)   Sixteen days after his conviction, Ortiz committed suicide.  (Docket No. 8 at ¶ 4.24; Civil Case No. 10-1097 at Docket No. 1 at ¶ 46.)

On May 5, 2011, Diaz-Colon recanted her testimonies in the Peña, Colomba, and Mariani cases.  (Docket No. 8 at ¶ 4.28; Civil Case No. 10-1097 at Docket No. 1 at ¶ 48.)  She said that she did not have personal knowledge of any of the murders; that she gave the statements because defendants Baez and Figueroa-Cruz exerted pressure on her; and because defendants Crespo and Redondo offered her money, a house, an asthma therapy machine, and assistance with recovering custody of her children.  (Docket No. 8 at ¶ 4.28; Civil

Case No. 10-1097 at Docket No. 1 at ¶¶ 33,48-50.)  When she recanted, Diaz-Colon stated that police officers conducted at least ten review sessions with her, where they showed her photographs of the criminal defendants, took her to the crime scenes, and showed her diagrams reflecting the positions of the corpses.  (Docket No. 8 at ¶ 4.28; Civil Case No. 10-1097 at Docket No. 1 at ¶ 49.)  In addition, she stated that she memorized scripted testimony.  (Docket No. 8 at ¶ 4.28; Civil Case No. 10-1097 at Docket No. 1 at ¶ 49.)

The defendants learned that Diaz-Colon was a paid informant and that she had been paid for her testimony in their cases for the first time when she recanted on May 5, 2011.  (Docket No. 8 at ¶ 4.29; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 48, 51.)  In addition, a narcotics agent, Jorge Diaz-Rivera provided a statement that Diaz-Colon was known for providing false information about criminal activity and that she had diminished mental capacity.  (Docket No. 8 at ¶ 4.30.)  In addition, he said he warned defendant Baez that they were all going to look foolish if they prosecuted plaintiff Velazquez.  (Docket No. 8 at ¶ 4.30.)

Plaintiff Velazquez moved for a new trial based on the information in Diaz-Colon's and Diaz-Rivera's statements.  (Docket No. 8 at ¶ 4.30; Civil Case No. 10-1097 at Docket No. 1 at ¶ 52.)  During the hearing on the motion, the paymaster in charge of paying

the informants admitted that a Puerto Rico prosecutor asked him to provide a copy of Diaz-Colon's contract for the Colomba case and that he sent the contract to the District Attorney's office. (Docket No. 8 at ¶ 4.31.)  Defendant Baez also testified that the police files were always available in the CIC and had never been lost. (Docket No. 8 at ¶ 4.31.)  Defendant Crespo admitted that he had lied about losing the files on the first day of trial. (Docket No. 8 at ¶ 4.31.)

The Guayama court denied the motion for retrial, and Sanabria committed suicide thereafter.  (Docket No. 8 at ¶¶ 4.31, 4.32; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 52, 53.)  On appeal, the Puerto Rico Supreme Court reversed the trial court's decision and ordered a new trial.  (Docket No. 8 at ¶ 4.33; Civil Case No. 10-1097 at Docket No. 1 at ¶ 54.)  The court found that the prosecution withheld critical impeachment evidence when they did not reveal that Diaz-Colon was a paid informant or turn over the police files in the Colomba case until the first day of trial. (Docket No. 8 at ¶ 4.33; Civil Case No. 10-1097 at Docket No. 1 at ¶ 54.)

On either February 2, 2009 or February 10, 2009, the Guayama Court dismissed all of the criminal charges against plaintiffs Diaz, Merced, Ortiz, Sanabria, Ramos, and Velazquez. (Docket No. 8 at ¶ 4.34; Civil Case No. 10-1097 at Docket No. 1 at ¶ 55.)  These

plaintiffs were actually released from jail and received their final notification of the judgments on October 1, 2009. (Civil No. 10-1097 at Docket No. 1 at ¶ 55.)

## II.  Legal Standards

### A.    Standard under 28 U.S.C. § 636(b)(1)

A district court may refer a case to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(b). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); Loc. Rule 72(d). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." Fed.R.Civ.P. 72(b); Loc. Rule 72(d); Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)). Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985). In conducting its review, the court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (b)(1)(C); Alamo Rodriguez v. Pfizer

Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003).

Furthermore, the Court may accept those parts of the report and

recommendation to which the parties do not object. See

Hernandez-Mejias v. Gen. Elec., 428 F.Supp.2d 4, 6 (D.P.R. 2005)

(citing Lacedra v. Donald W. Wyatt Det. Facility, 334 F.Supp.2d

114, 125 (D.R.I. 2004)).

### B.   Standard Under Rule 12(b)(6) Motion to Dismiss

Pursuant to Rule 12(b)(6), the Court can dismiss a

complaint that fails to state a claim upon which relief can be

granted.   Fed.R.Civ.P. 12(b)(6).   When assessing whether a

plaintiff's complaint provides "fair notice to the defendants" and

states "a facially plausible legal claim," the Court must utilize

a two-pronged approach. See Ocasio-Hernandez v. Fortuño-Burset,

640 F.3d 1, 11-12 (1st Cir. 2011).   First, the Court can disregard

statements that "offer legal conclusions couched as fact," because

the plaintiff must do more than "parrot the elements of the cause

of action." Id. at 12.   Second, the Court is bound to treat all

"properly pled factual allegations" as true and draw all reasonable

inferences in the plaintiffs' favor. Id.   The Court must base its

determination solely on the material submitted as part of the

complaint and expressly incorporated within it. See Alternative

Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33

(1st Cir. 2001).

The factual material pled must be sufficient "to raise a right to relief above the speculative level," and to permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernandez, 640 F.3d at 12 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Supreme Court has held that a plaintiff's pleading must cross "the line between possibility and plausibility." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 577 (2007). A district court should not attempt to forecast the likelihood of success even if proving the alleged facts is "improbable." Id. at 556. A complaint that contains a plausible basis for relief, therefore, "may proceed even if it appears that a recovery is very remote and unlikely." Id. at 556 (internal citation omitted). The trial court must draw "on its judicial experience and common sense" in evaluating the complaint's plausibility. Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (internal citation omitted).

## III. Legal Analysis

The defendants move for dismissal of all claims against them. First, they argue that they were sued in their official capacity and are entitled to Eleventh Amendment immunity. Second, they contend that some of the plaintiffs bringing claims do not have standing. Third, they argue that the claims have expired under the applicable statute of limitations. Fourth, they contend that the

plaintiffs fail to plead any claims sufficiently, including malicious prosecution under the Fourth Amendment.  Fifth, the defendants argue that the plaintiffs fail to plead a claim for conspiracy under the Fourth Amendment sufficiently.  Sixth, the prosecutor defendants contend that as prosecutors, they are entitled to absolute immunity for their actions.  Seventh, all defendants, including prosecutors not shielded by absolute immunity, contend that they are protected by qualified immunity.  Finally, the defendants argue that the state claims should be dismissed for lack of supplemental jurisdiction.  (See Docket Nos. 123 & 129.)  The Court addresses each argument in turn.

**A.    Eleventh Amendment Immunity**

Defendants Fuentes, Capo, Toledo, Solivan, and Tirado argue that they were sued in their official capacity and are entitled to Eleventh Amendment immunity.[9]  (Docket No. 123 at p. 34.)  Often, when a suit is brought against a state official, it is considered a suit against the state, which triggers Eleventh Amendment immunity.  U.S. Const. Amend. XI; <u>Asociacion de Subscripcion Conjunta del Seguro de Responsabilidad Obligatorio v.</u>

_____

[9] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.

Civil No. 09-1835 and 10-1097 (FAB/MEL)                          16

Flores Galarza, 484 F.3d 1, 24 (1st Cir. 2007).  It is well-settled law, however, that section 1983 suits against state officials in their personal or official capacity may proceed so long as the plaintiff is not seeking compensation from state funds.  See Edelman v. Jordan, 415 U.S. 651, 677 (1974); Ex Parte Young, 209 U.S. 123, 167 (1908).  Defendants in that type of suit do not receive Eleventh Amendment protection.  See id.

        The Court finds that the defendants' arguments regarding Eleventh Amendment immunity are unavailing.  Both the amended complaint in Diaz-Colon v. Toledo-Davila, Civil No. 09-1835, and the complaint in Velazquez-Colon v. Fuentes-Agostini, Civil Case No. 10-1097 state that the moving defendants are only being sued in their individual capacity, and plaintiffs are not seeking compensation from state funds. (Docket No. 8 at ¶¶ 3.7-3.15; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 21-28.)  Defendants Fuentes, Capo, Toledo, Solivan, and Tirado were not sued in their official capacity; therefore, the magistrate judge is correct in finding that there is no Eleventh Amendment immunity for these defendants. Accordingly, the Court **ADOPTS** the magistrate judge's recommendation and **DENIES** the motion to dismiss on Eleventh Amendment immunity grounds.

B.    **Standing**

The defendants collectively argue that many of the plaintiffs do not have standing to bring claims under section 1983 because relatives of victims of constitutional violations do not have standing. (Docket No. 123 at pp. 21-23.)  The only federal claims that the relatives bring, however, are on behalf of the heirs of Ortiz and Sanabria, who are now deceased. (Docket No. 8 at ¶¶ 5.20-5.30; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 99-103; 111-15.)  Section 1983 does not address whether or not the members of an estate can bring a cause of action under the statute. The question of whether the members of an estate can bring a section 1983 claim is governed by section 1988, which the Supreme Court has interpreted as providing that survivorship issues are determined by state law.  See Rivera v. Medina, 963 F.Supp. 78, 84 (D.P.R. 1997) (citing Robertson v. Wegmann, 436 U.S. 584 (1978)). In this case, the law of Puerto Rico governs whether members of an estate can bring the cause of action.  See id. (looking to Puerto Rico law to determine if a section 1983 claim of depravation of life without due process of law is inheritable).

The Court finds that the plaintiffs who are members of an estate have standing to bring a section 1983 claim.  Puerto Rico explicitly allows the members of an estate to bring a survivorship action in tort.  See Widow of Delgado v. Boston Ins., 1 P.R. Offic.

Trans. 823, 834-35 (1973); see also Rivera, 963 F.Supp. at 84 ("Case law indicates that § 1983 actions base[d] on deprivation of life without due process of law under the Fourteenth Amendment are inheritable under Puerto Rico law."). Ortiz's and Sanabria's heirs, therefore, have inherited the right to bring the section 1983 claims in this case. Because the remaining relatives brought claims under Puerto Rico law, and not under federal law, the defendants' section 1983 standing arguments do not apply to those relatives. The Court **ADOPTS** the magistrate judge's recommendation and **DENIES** the motion to dismiss on standing grounds.

### C.   Statute of Limitations

Defendants argue that plaintiffs' section 1983 claim must be dismissed because the statute of limitations has run. It is undisputed that the statute of limitations for plaintiffs' section 1983 claims is one year, borrowed from the Puerto Rico personal injury statute of limitations. (Docket No. 123 at pp. 9-10; Docket No. 124 at p. 7); see also Chevere-Rodriguez v. Pagan, 114 F.App'x. 412, 414 (1st Cir. 2004). The one-year clock begins to run the day after the accrual of the cause of action, which federal law determines is the date "when the plaintiff knows, or has reason to know, of the injury on which the action is based." Id.; Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349 (1st Cir. 1992). Different

causes of action will have different accrual dates because the
expectation of when the plaintiff knew or should have known of the
injury will vary depending on when all of the elements for the
claim are established.  See Nieves v. McSweeney, 241 F.3d 46, 52
(1st Cir.  2001).

        The plaintiffs and defendants disagree over the date of
accrual.  The defense contends that the accrual date is based on a
cause of action for false arrest, while the plaintiffs argue that
the statute of limitations for malicious prosecution applies.[10]  The
plaintiffs' claims are for malicious prosecution.  Thus, the Court
agrees with the plaintiffs.

        The plaintiffs correctly argue that the accrual for their
section 1983 malicious prosecution claim is "the termination of the
antecedent criminal proceedings."  (Docket No. 124 at pp. 7-8
(citing Nieves, 241 F.3d at 51.)  The defendants, however, state
that the accrual date occurs when "the aggrieved person 'knows, or
has reason to know, of the injury on which the action is based.'"
(Docket No. 123 at p. 10 (citing Rivera-Muriente v. Agosto-Alicea,

_____

        [10] Malicious prosecution involves "wrongfully instituting legal
process," Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir.
2010), whereas false arrest involves "detention *without legal
process*," Wallace v. Kato, 549 U.S. 384, 389 (emphasis in
original).   The elements of malicious prosecution include the
termination of a criminal action in the plaintiffs' favor, but
termination is not an element of false arrest.  See, e.g., Barros-
Villahermosa v. U.S., 642 F.3d 56, 58 (1st Cir. 2011).

959 F.2d 349, 353 (1st Cir. 1992)).) Alternatively, the defendants state that "the statute of limitations upon a section 1983 claim seeking damages for a false arrest . . . where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to the legal process." (Docket No. 123 at p. 11 (citing <u>Wallace</u>, 549 U.S. at 397).) Because the defendants are arguing that the statute of limitations for false arrest applies rather than the malicious prosecution statute of limitations, they state the wrong accrual date. Because the plaintiffs' claims are for section 1983 violations of malicious prosecution, (Docket No. 8 at ¶ 4.1; Civil Case No. 10-1097 at Docket No. 1 at ¶ 31), they could not have brought the claims until the criminal actions terminated in their favor.

The Court finds that the statute of limitations has not run as to the complaints filed by either set of plaintiffs. The termination of criminal action in the plaintiffs' favor occurred when the Guayama Court dismissed all charges against Jose Luis Diaz-Colon, Merced, Ortiz, Sanabria, Ramos, and Velazquez. The first set of plaintiffs state that this occurred on February 2,

2009.[11]  (Docket No. 8, ¶ 4.34.)  The first set of plaintiffs filed

their initial complaint on August 21, 2009, which is well within

the one-year statute of limitations period.  (Docket No. 1.)

Therefore, the statute of limitations does not bar the first set of

plaintiffs' claims.

          The second set of plaintiffs did not file their complaint

until February 2, 2010, which is more than one year after

February 2, 2009.  (Civil Case No. 10-1097 at Docket No. 1.)

According to that complaint, however, the dismissal of all charges

took place on February 10, 2009, and the notification of the

dismissal order took place on October 1, 2009.  Id. at ¶ 55.  The

defendants only cite to the first set of plaintiffs' complaint to

support their contention that the charges were dismissed on

February 2, 2009, but the defendants do not address the second date

in their motion.  (Docket No. 123 at p. 4.)  At the Rule 12(b)(6)

_____

          [11] The two complaints consolidated in this case indicate that
the charges were dismissed on different days.  Because the facts
pled are taken as true at the motion to dismiss stage, the Court
will evaluate the statute of limitations based on the date alleged
in each complaint for each set of plaintiffs.  At later stages in
the case, the Court can consider additional evidence regarding the
correct date the charges were dismissed and revisit the statute of
limitations argument.  See Fed.R.Civ.P. 56(c) (stating a court may
grant summary judgment if "the pleadings, depositions, answers to
interrogatories, and admissions of file, together with the
affidavits, if any, show there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as
a matter of law.").

Civil No. 09-1835 and 10-1097 (FAB/MEL)                    22

motion to dismiss stage, the non-conclusory allegations of the complaint are accepted as true.  Therefore, as the magistrate judge found, the second set of plaintiffs' claims are also not barred by the statute of limitations because they were filed within one year after the charges were dismissed as to all plaintiffs.  The Court **ADOPTS** the magistrate judge's recommendation and **DENIES** the motion to dismiss on statute of limitations grounds.

     D.    **Section 1983 Malicious Prosecution Claims**

          Section 1983 provides a cause of action for a plaintiff to bring a civil claim against a person who violates their constitutional rights while acting under the color of state law. 42 U.S.C. § 1983.  Section 1988 outlines how the claims brought under section 1983 will proceed procedurally; it also indicates what law will govern the claim.  42 U.S.C. § 1988.  The First Circuit Court of Appeals has "assume[d] without deciding that malicious prosecution can, under some circumstances, embody a violation of the Fourth Amendments and thus ground a cause of action under section 1983." Moreno-Medina v. Toledo, 458 F.App'x. 4, 7 (1st Cir. 2012); see also Nieves, 241 F.3d at 54.

> 1. **Defendants Colon, Fuentes, Solivan, Tirado, and Toledo**

>> a.   **Personal Liability for Malicious Prosecution**

Defendants Colon, Fuentes, Solivan, Tirado, and Toledo argue that plaintiffs' malicious prosecution claims are not sufficient to sustain a section 1983 cause of action.  As the court discussed earlier, however, the plaintiffs' complaint only needs to be a "short and plain statement" with enough detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  Fed. R. Civ. P. 8(a); <u>Twombly</u>, 550 U.S. at 555.  To show entitlement to relief, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  <u>Twombly</u> 550 U.S. at 555.  Statements that "offer legal conclusions couched as fact" can be disregarded because the plaintiff must do more than "parrot the elements of the cause of action." <u>Ocasio-Hernandez</u>, 640 F.3d at 12 (1st Cir. 2011).  Facts that are non-conclusory, however, must be treated as true, even if they seem unbelievable.  <u>Iqbal</u>, 556 U.S. at 681.  If the facts taken as true "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the claim is plausible enough to withstand a Rule 12(b)(6) motion to dismiss. <u>Id.</u> at 678.

The first set of plaintiffs only allege that defendants Colon, Fuentes, Solivan, Tirado, and Toledo "displayed a reckless or callous indifference" to the rights of citizens they encountered, including the plaintiffs. (Docket No. 8 at ¶¶ 4.36-4.37.) The second set of plaintiffs only assert that Colon, Fuentes, Solivan, Tirado, and Toledo gave their "acquiescence," provided a "lack of supervision," and "displayed a reckless or callous indifference to the rights" of the plaintiffs. (Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 31, 57-58.) The facts pled in the complaints do not mention any words or actions by these five defendants. Both complaints contain only conclusory assertions to meet the elements of the cause of action, and are unsupported by any real factual allegations with respect to Colon, Fuentes, Solivan, Tirado, and Toledo. In Morales v. Toledo, the court found that the plaintiff failed to plead a section 1983 claim sufficiently under the Fourteenth Amendment because the plaintiff only alleged that the defendant failed to supervise and train police officers properly. See 638 F.Supp.2d 168, 175 (2009). The court indicated that the complaint lacked additional factual allegations to link the defendant's inaction to a constitutional violation. See Morales, 638 F.Supp.2d at 175. Similarly, in this case, where there are no facts alleged to show a plausible link between the plaintiffs' failure of supervision, reckless

indifference, or acquiescence to any constitutional violation, the conclusory statements are not enough to sustain a section 1983 claim against the defendants in their personal capacity. Therefore, the Court **ADOPTS** the magistrate judge's recommendation. The malicious prosecution claims against these five defendants are **DISMISSED**.

> **b.    Supervisory Liability**

Supervisory liability cannot be used to attach liability for malicious prosecution to these defendants either. Plaintiffs admit that *respondeat superior* is not a viable theory under section 1983. (Docket No. 124 at p. 15 (citing Rodriquez-Ramos v. Hernandez-Gregorat, 685 F.3d 24, 41 (1st Cir. 2012)).) Only "persons who have actually abused their positions of authority, and hence only persons who were directly involved in the wrongdoing may be held liable." Cordero-Suarez v. Rodriquez, 689 F.3d 77, 82 (1st Cir. 2012) (internal citation omitted).  At least one other court in this district has found that "[m]erely alleging that a supervisor failed to train his subordinates is patently insufficient to establish a [s]ection 1983 claim against the supervisor." Rossi-Cortes v. Toledo-Rivera, 540 F.Supp.2d 318, 325 (D.P.R. 2008).  In Rossi-Cortes, the plaintiff's failure to identify any factual support for the supervisory defendant's alleged failure to train or a link between the alleged failure to

train and the alleged actions to violate the plaintiff's
constitutional right was insufficient to sustain a section 1983
claim based on supervisory liability.   540 F.Supp.2d at 324.
Similarly, as the magistrate judge found, because there are no
factual allegations linking any subordinate's violation of
constitutional rights to the actions of defendants Colon, Fuentes,
Solivan, Tirado, and Toledo, the plaintiffs' supervisory liability
allegations fail to support a section 1983 claim.[12]   The Court
**ADOPTS** the magistrate judge's recommendation and **DISMISSES**
plaintiffs' supervisor liability claims against defendants Colon,
Fuentes, Solivan, Tirado and Toledo.

### 2.   Defendants Capo and Figueroa

#### a.   Section 1983 Malicious Prosecution Claims

Defendants Capo and Figueroa also argue that
the plaintiffs fail to plead sufficient facts to sustain a
malicious prosecution claim against them.   As discussed earlier,
the First Circuit Court of Appeals has assumed, without deciding,
that malicious prosecution claims can be brought under section 1983

---

[12] The Court agrees with the magistrate judge that this also
applies to defendants Capo and Figueroa because similarly there is
no factual allegations to link the actions of their subordinates to
the allegations against them.   Therefore, a cause of action for
malicious prosecution cannot be sustained on a theory of
supervisory liability with respect to Capo and Figueroa either.

Civil No. 09-1835 and 10-1097 (FAB/MEL)                              27

as a violation of the Fourth Amendment.[13]   <u>Moreno-Medina</u>, 458
F.App'x. at 7.   To establish a claim for malicious prosecution
pursuant to section 1983, the plaintiffs "must prove:  (1) state
action; and (2) a deprivation of [federal] constitutional rights."
<u>Meehan v. Town of Plymouth</u>, 167 F.3d 85, 88 (1999).

          With regards to the first requirement, state
action for malicious prosecution, the plaintiffs "must prove four
elements:  '1) that a criminal action was initiated or instigated
by the defendants; 2) that the criminal action terminated in favor
of plaintiff; 3) that defendants acted with malice and without
probable cause; and 4) that plaintiff suffered damages.'"   <u>Barros-
Villahermosa</u>, 642 F.3d at 58 (quoting <u>Gonzalez Rucci v. U.S.
I.N.S.</u>, 405 F.3d 45, 49 (2005)).   Under Puerto Rico law, proving
"malice" is equivalent to proving "bad faith."   <u>Id.</u> at 59.

          Unlike the previous group of defendants
discussed, the plaintiffs make non-conclusory allegations against
defendants Capo and Figueroa with respect to the first, second, and
fourth element of a malicious prosecution claim.   The plaintiffs,
however, fail to make non-conclusory factual allegations to support
the third element of malice.   The non-conclusory factual

---

[13] The Fourth Amendment states that "[t]he right of the people
to be secure in their person, houses, papers, and effects, against
unreasonable searches and seizures, shall not be violated."   U.S.
Const. Amend. IV.

allegations from the plaintiffs are:  1) defendants Figueroa-Cruz
and Capo "discussed the testimony proffered by [Diaz-Colon]";
2) "[Capo] ordered subordinate prosecutor defendants to take her
statements under oath and to file criminal charges against the
purported murders"; 3) defendant Figueroa took Diaz-Colon's sworn
statements, "containing facts sufficient to sustain findings of
probable cause" against the innocent plaintiffs; 4) under orders
from defendant Capo, defendant Figueroa "presented in the Guayama
Court the false statements given under oath by [Diaz-Colon]"; and
5) defendant Capo "manifested that [defendant] prosecutor Figueroa
insisted in not dismissing the criminal charges" during a status
conference.   (Docket No. 8 ¶¶ 4.2-4.4, 4.10, 4.20; Civil Case
No. 10-1097 at Docket No. 1 at ¶ 33-35, 38.)   These factual
allegations support three of the elements of malicious prosecution,
because they link defendants Figueroa-Cruz and Capo to the criminal
charges brought against the plaintiffs, which eventually were
terminated in the plaintiffs' favor and caused them damages.

          The plaintiffs fail to allege, however, non-
conclusory factual allegations to support the third element of
showing that the defendants acted with malice.   See Barros-
Villahermosa, 642 F.3d at 58.   The plaintiffs claim that the
defendants "fabricated evidence and induced and threatened a paid
informant to provide false testimony," (Civil Case No. 10-1097 at

Docket No. 1 at ¶ 4.), or, alternatively, "conspired with each other and/or aided and abetted one another to fabricate charges and maliciously prosecute innocent individuals," (Docket No. 8 at ¶ 4.1.)  The plaintiffs' primary evidence of bad faith is the sworn statement Diaz-Colon made recanting her earlier testimony.  When Diaz-Colon recanted her statement, however, she never mentioned defendant Capo or Figueroa.  (Docket No. 8 at ¶ 4.28.)  In <u>Paret-Ruiz v. U.S.</u>, the court denied a motion to dismiss and found that the plaintiffs sufficiently pled factual allegations to support bad faith for a malicious prosecution claim.  847 F.Supp.2d 289, 298 (D.P.R. 2012).  The court reasoned that "the complaint was rife with allegations" naming the defendant Drug Enforcement Agency agents and alleging those defendants lied and misrepresented the plaintiffs actions and statements in order get a grand jury indictment, which was enough to support an allegation of bad faith. <u>Id.</u>  Unlike in <u>Paret-Ruiz</u>, the plaintiffs in this case have not made non-conclusory factual allegations to support their allegations that defendants Capo and Figueroa fabricated evidence or improperly induced testimony.  There are no statements specifically linking Capo and Figueroa to the fabrication of evidence.  Moreover, even assuming that other co-defendants acted in bad faith, no reasonable inference can be made from the facts pled that Capo and Figueroa acted in bad faith.

The plaintiffs also allege that the prosecution withheld exculpatory evidence during the plaintiffs' trials as evidence of malice. They contend that the prosecution waited until "[t]he day of the opening arguments in the Colomba Case" to provide the defense "the names of witnesses that were interviewed by the homicide agents and whose statements contradicted the sworn statements of the prosecution['s] star witness, [Diaz-Colon]." (Docket No. 8 at ¶ 4.22; see also Civil Case No. 10-1097 at Docket No. 1 at ¶ 44.) The defense in the murder cases had requested all exculpatory evidence many times leading up to the trials, but prosecutors repeatedly denied any such evidence existed. (Docket No. 8 at ¶ 4.19; see also Civil Case No. 10-1097 at Docket No. 1 at ¶ 42.) The prosecution said that the files had been lost, but later defendant Baez revealed that the files were never really missing. (Docket No. 8 at ¶¶ 4.22, 4.31; Civil Case No. 10-1097 at Docket No. 1 at ¶ 44.) In addition, the prosecution did not reveal the fact that Diaz-Colon was a paid informant for the CIC, and it was not until she recanted that the defense learned this. (Docket No. 8 at ¶¶ 4.19, 4.28; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 42, 51.) Other than conclusory statements, however, the plaintiffs do not establish a link between the failure to disclose and defendants Capo or Figueroa.

None of the factual allegations alleges that defendant Capo or Figueroa were aware that any exculpatory documents existed or that Diaz-Colon was a paid informant.  The fact that defendant Figueroa was present when Diaz-Colon made her statement, after she worked extensively with police officers, does not lead to an inference that defendant Figueroa was knowingly involved in any misconduct.  Also, none of the facts pled leads to an inference that defendant Capo was even aware of any misconduct. A plaintiff's non-conclusory factual allegations must demonstrate a "right to relief above the speculative level." Twombly, 550 U.S. at 555.  As the magistrate judge found, the facts accepted as true do not lead to a plausible inference that defendants Capo and Figueroa were involved with the alleged misconduct.  The Court will not address whether the plaintiffs sufficiently pled a deprivation of a constitutional right to bring the section 1983 claim because the elements of the state action were not satisfied with respect to defendants Capo and Figueroa. Thus, the Court **ADOPTS** the magistrate judge's recommendation and **DISMISSES** the malicious prosecution claims against defendants Capo and Figueroa.

3.   **Defendants Baez, Figueroa-Cruz, and Redondo**

a.   **Section 1983 Malicious Prosecution Claims: State Elements**

The Court finds that plaintiffs' section 1983 claims against defendants Baez, Figueroa-Cruz, and Redondo are sufficiently well-pled to survive a motion to dismiss.  For a claim of malicious prosecution to be successful under section 1983, the plaintiffs "must prove:  (1) state action; and (2) a deprivation of constitutional rights."  <u>Meehan v. Town of Plymouth</u>, 167 F.3d 85, 88 (1999).

As stated above, with regard to satisfying the first element of proving the state action, the plaintiffs "must prove four elements:  '1)that a criminal action was initiated or instigated by the defendants; 2) that the criminal action terminated in favor of plaintiff; 3) that defendants acted with malice and without probable cause; and 4) that plaintiff suffered damages.'"  <u>Barros-Villahermosa</u>, 642 F.3d at 58.  The plaintiffs pled sufficient facts to establish the first two elements: 1) the defendants prosecuted the plaintiffs for the crime of murder in a court in Puerto Rico, and 2) the action was eventually terminated in favor of the plaintiffs when all charges were dismissed.  Plaintiffs also allege that, as a result of the defendants' actions, most of the plaintiffs were wrongfully imprisoned for

nearly ten years,[14] which establishes the fourth prong of suffering damages.

The only remaining element required to prove malicious prosecution is the third element, which requires plaintiffs to show both bad faith or malice and a lack of probable cause.  The Court finds that plaintiffs' complaints are sufficiently well-pled to meet that element as against defendants Baez, Figueroa-Cruz and Redondo.  The plaintiffs allege that: 1) defendants Baez, Figueroa-Cruz and Redondo "offered [Diaz-Colon] cash, a house, an asthma therapy machine and the recovery of the custody of her children" in exchange for her testimony in these cases; 2) defendants Baez and Figueroa-Cruz pressured Diaz-Colon into making the false statements; 3) defendant Baez testified that the files that had been requested but not turned over to the defense in the murder cases were always available in the CIC and had never been lost; 4) Diaz-Colon stated she memorized scripted testimony after police officers conducted at least ten review sessions with her, where they showed her photographs of the criminal defendants, took her to the crime scenes, and showed her diagrams reflecting the positions of the corpses.  (Docket No. 8 at

---

[14] Ortiz committed suicide sixteen days after his conviction, and was imprisoned for an unspecified length of time prior to that. Sanabria served nearly seven years in prison prior to committing suicide while incarcerated.

¶ 4.28; Civil Case No. 10-1097 at Docket No. 1 at ¶ 49.)  In Paret-Ruiz, the court denied a motion to dismiss and found that the plaintiffs sufficiently pled factual allegations to support bad faith in a malicious prosecution claim. 847 F.Supp.2d at 298.  The court reasoned that "the complaint was rife with allegations" naming the defendant Drug Enforcement Agency agents and alleging those defendants lied and misrepresented the plaintiffs actions and statements in order get a grand jury indictment, which supported the bad faith allegation.  Id. Similarly, in this case, there are non-conclusory factual allegations that defendants Baez, Figueroa-Cruz, and Redondo fabricated testimony to get a grand jury indictment.  From these facts, it is plausible to infer that defendants Baez, Figueroa-Cruz, and Redondo pressured Diaz-Colon to testify falsely with testimony they created; worked with her to ensure she was able to testify to the false statements at trial; and brought criminal charges without probable cause.

        The defendants' argument that the plaintiffs fail to allege a lack of probable cause is unpersuasive.  The defendants contend that because the jury believed Diaz-Colon's testimony, then there was sufficient probable cause to bring criminal charges against the plaintiffs.  The complaint alleges that the probable cause for the arrest warrants and indictments came solely from Diaz-Colon's false statements, and without them

the Guayama Court dismissed all charges when the cases were sent to be retried.   (Docket No. 8 at ¶¶ 4.3. 4.10, 4.34; Civil Case No. 10-1097 at Docket No. 1 at ¶¶ 35, 43, 45-47.)   Accepting the non-conclusory factual allegations in the complaint as true, the defendants knew Diaz-Colon's statements were untrue, the statements were the only evidence provided to establish probable cause, and, therefore, it is reasonable to infer that there was no probable cause in these cases.   As the magistrate judge found, taking the factual allegations as true, a reasonable inference can be made that defendants Baez, Figueroa-Cruz, and Redondo acted in bad faith and without probable cause in these prosecutions.   The plaintiffs, therefore, have sufficiently pled all four of the state action requirements of a section 1983 malicious prosecution claim.   The Court **ADOPTS** the magistrate judge's recommendation and **DENIES** defendants Baez's, Figueroa-Cruz's and Redondo's motion to dismiss plaintiffs' section 1983 malicious prosecution claims.

> **b.   Section 1983 Malicious Prosecution Claims: Constitutional Violation**

In order for a malicious prosecution claim to proceed under the Fourth Amendment, plaintiffs who bring a claim pursuant to section 1983 must show a violation of their constitutional rights in addition to meeting the state elements. See Britton v. Maloney, 196 F.3d 24, 28-29 (1999).   "The crux of

the inquiry is whether a "seizure" occurred." Id. at 29.   A

plaintiff proves that a seizure occurred by showing "'deprivation

of liberty accompanying the prosecution' rather than in the

prosecution itself." Id. (quoting Gallo v. Philadelphia, 161 F.3d

217, 222 (3rd Cir. 1998)). The deprivation of liberty normally

"takes 'the form of an arrest warrant (in which case the arrest

would constitute the seizure) or a subsequent charging document (in

which case the sum of post-arraignment deprivations would comprise

the seizure).'" Moreno-Medina, 458 Fed. App'x. at 7 (quoting

Nieves, 241 F.3d at 54).

        The plaintiffs in this case demonstrated a

deprivation of liberty because their conviction was based on false

testimony and the charges were dropped when the false testimony was

discovered.  Post-arraignment deprivation of liberty can be shown

if the plaintiffs were "arrested, detained, restricted in [their]

travel, or otherwise subject to a deprivation of [their] liberty

before the charges against [them] were dismissed." Britton, 196

F.3d at 30.  Most of the plaintiffs were incarcerated for nearly

ten years, which most certainly qualifies as a deprivation of

liberty. See Rodriguez-Esteras v. Solivan-Diaz, 266 F.Supp.2d 270,

280 (D.P.R. 2003) (finding that post-arraignment detention for a

little over a month was a deprivation of liberty under the Fourth

Amendment in a malicious prosecution claim).   Because the

plaintiffs have shown a deprivation of liberty that constitutes a
"seizure" under the Fourth Amendment in addition to the state
elements, they have met all of the elements of their section 1983
Fourth Amendment claim.    Therefore, the Court agrees with the
magistrate judge that the claims against defendants Baez, Figueroa-
Cruz, and Redondo are sufficiently well-pled.    The Court **ADOPTS** the
magistrate judge's recommendation.    The motion to dismiss the
constitutional violation claim against these defendants is **DENIED**.

### E.  Conspiracy

            The defendants additionally argue that the plaintiffs'
conspiracy claims should be dismissed because the plaintiffs did
not state a conspiracy claim under section 1983.    (Docket No. 123
at pp. 23-25.)    They state that the plaintiffs' only allegation
linking the defendants to a conspiracy is the fact that the
defendants work together, and that is not enough to sustain a
conspiracy claim.[15]    <u>Id.</u> at p. 25.    "In order to make out an
actionable conspiracy under section 1983, a plaintiff has to prove
not only a conspiratorial agreement but also an actual abridgement
of some federally-secured right."    <u>Nieves</u>, 241 F.3d at 53.    A

_____

[15] The defendants incorrectly cite to <u>Aulson v. Blanchard</u>,
which is a case about claims of conspiracy under 42 U.S.C. § 1985,
not section 1983.    83 F.3d 1, 3 (1st Cir. 1996).    The elements
required for a conspiracy claim under section 1983 differ from
those required under section 1985.

conspiratorial agreement under section 1983 requires the plaintiffs to show "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong or injury upon another,' and 'an overt act that results in damages.'" Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1998) (internal citations omitted).  In order to show an abridgment of a federally secured right in this case, the plaintiffs must successfully plead that the malicious prosecution claim led to a "seizure" under the Fourth Amendment.  See Nieves, 241 F.3d at 54.

        Plaintiffs have made a well-pled claim for conspiracy with respect to defendants Baez, Figueroa-Cruz, and Redondo, but not the rest of the defendants.  First, the Court will address if a violation of a federally secured right has been well-pled and, then, if a conspiratorial agreement has been well-pled.  The plaintiffs have shown a "seizure" under the Fourth Amendment through their deprivation of liberty while being incarcerated for nearly ten years as a result of malicious prosecution.  As discussed earlier, the plaintiffs did not allege sufficient facts to permit even a reasonable inference that seven of the moving defendants, Colon, Fuentes, Solivan, Tirado, Toledo, Capo and Figueroa, participated in the malicious prosecution that led to the

deprivation of liberty.  Thus, the plaintiffs' complaint also fails to plead a conspiracy against these defendants.  The Court **ADOPTS** the magistrate judge's recommendation and the conspiracy claim against defendants Colon, Fuentes, Solivan, Tirado, Toledo, Capo and Figueroa is **DISMISSED.**

Because the Court found that there was a well-pled complaint for malicious prosecution by defendants Baez, Figueroa-Cruz and Redondo, the plaintiffs have sufficiently alleged a deprivation of liberty with respect to those defendants.  The plaintiffs have shown an abridgment of a federally secured right by successfully pleading that the malicious prosecution claim led to a "seizure" under the Fourth Amendment.  See Nieves, 241 F.3d at 54.  Because there are plausible factual allegations linking defendants Baez, Figueroa-Cruz and Redondo to the malicious prosecution, the first element of conspiracy, an abridgment of a federally secured right, has been established against these defendants.

The plaintiffs also need to plead non-conclusory factual allegations that a conspiratorial agreement existed between two or more of the defendants in order to establish the conspiracy claim. Nieves, 241 F.3d at 53.  A conspiratorial agreement can be shown through circumstantial evidence rather than an express agreement. Earle, 850 F.2d at 845.  The plaintiffs allege that defendants Baez

and Figueroa-Cruz pressured Diaz-Colon into making the false statements; defendant Redondo offered her money and other incentives to testify falsely; and unidentified police officers coached Diaz-Colon on her testimony on at least ten sessions. This circumstantial evidence is sufficient to make for a plausible inference that a conspiracy existed between these defendants to generate false testimony to use against the plaintiffs. See Villafañe-Rivera v. Toledo-Davila, No. 10-2079, 2011 WL 5873072, at *8 (D.P.R. Nov. 21, 2011) (finding that even though many of the allegations of conspiracy were conclusory, an allegation that there was a code of silence to lie about police beatings was sufficient to withstand a motion to dismiss). As the magistrate judge found, therefore, the plaintiffs have stated sufficient facts for a claim of conspiracy to survive a motion to dismiss with respect to defendants Baez, Figueroa-Cruz, and Redondo. The Court **ADOPTS** the magistrate judge's recommendation, and the motion to dismiss the conspiracy claims against defendants Baez, Figueroa-Cruz, and Redondo, therefore, is **DENIED**.

### F.   Absolute Immunity

Additionally, the defendants argue that the defendant prosecutors are entitled to absolute immunity for the actions they took during the prosecution of the murder cases. (Docket No. 123 at pp. 26-31.) The only remaining moving defendant prosecutor is

defendant Redondo.  Prosecutors acting as advocates of the state
are provided with absolute immunity, while actions taken as an
investigator are only protected through qualified immunity.
Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  In addition, "a
prosecutor's fabrication of false evidence during the preliminary
investigation of an unsolved crime . . . remains protected only by
qualified immunity."  Id. at 275.  The malicious prosecution claim
alleges that prosecutors, including defendant Redondo, fabricated
evidence before any of the plaintiffs in this case were arrested.
The Court agrees with the magistrate judge's finding that because
the plaintiffs allege that the defendant prosecutors fabricated
evidence before bringing charges against the plaintiffs, those
actions are not protected by absolute immunity.  The Court **ADOPTS**
the magistrate judge's recommendation, and the motion to dismiss
based on absolute immunity is **DENIED**.

     **G.   Qualified Immunity**

          The defendants also argue that for anyone who is not
protected by absolute immunity, qualified immunity applies, and,
therefore, the claims should be dismissed.  (Docket No. 123 at
pp. 31-33.)  Qualified immunity generally shields government
officials from claims that arise from discretionary actions taken,
as long as "their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person

would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

For a plaintiff to overcome qualified immunity, the court must

determine if the plaintiff alleges sufficient facts to plead a

constitutional violation and if that right was "clearly

established" at the time the misconduct occurred. <u>Pearson v.</u>

<u>Callahan</u>, 555 U.S. 223, 232 (2009).

　　　　　The defendants argue that they "acted within the law,"

"perform[ed] their duties as established by the Puerto Rico

Criminal Code and law at that time," and "all the evidence pointed

to the Adjudged Plaintiffs." <u>Id.</u> at p. 32. As discussed earlier,

however, the plaintiffs have sufficiently pled a claim of a

constitutional violation as part of the malicious prosecution claim

with respect to defendants Baez, Figueroa-Cruz and Redondo. The

only remaining issue is whether that right to be free from seizure

under the Fourth Amendment was "clearly established" at the time

the violation occurred. A constitutional right is "clearly

established" for qualified immunity purposes under the Fourth

Amendment if "'a consensus of persuasive authority' exists 'such

that a reasonable officer could not have believed that his actions

were lawful.'" <u>Maldondo v. Fontanes</u>, 568 F.3d 263, 271 (1st Cir.

2009) (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 617 (1999)). In

<u>Maldonado</u>, the question was whether the Fourth Amendment right to

be free of the seizure of family pets was "clearly established."

Id.  The Maldonado court found that the Fourth Amendment right to be free from seizure of family pets was "clearly established" when three circuits had decided the right existed prior to the alleged misconduct, one agreed soon thereafter, and no other circuit decided otherwise.  Id.

In 1999, as well as today, the First Circuit Court of Appeals has not ruled on whether a malicious prosecution claim can be brought under the Fourth Amendment.  Since the Supreme Court held that a malicious prosecution claim could not be brought under the Fourteenth Amendment, however, every circuit that has considered the question has found that a malicious prosecution claim can be brought under the Fourth Amendment.  See Britton, 196 F.3d at 29 n.3 (1st Cir. 1999) (citing eight circuits).  Five of these circuits published their decisions prior to the first time that Diaz-Colon gave a sworn statement.  Id.  The weight of persuasive authority is even greater in this case than what was sufficient in Maldonado; here, five circuits decided the right existed prior to the alleged misconduct, three agreed soon thereafter, and no contrary authority exists.  Thus, a reasonable officer would have been aware of the constitutional right to be free of a malicious prosecution seizure under the Fourth Amendment.  Therefore, the Court agrees with the magistrate judge's finding that the defendants are not entitled to qualified immunity in this

case. The Court **ADOPTS** the magistrate judge's recommendation, and
the motion to dismiss on qualified immunity grounds is **DENIED**.

### H.    Supplemental Jurisdiction

The plaintiffs have also brought claims against the
defendants pursuant to Puerto Rico law.   The defendants request
dismissal   of   the   state   claims   for   lack   of   supplemental
jurisdiction.   (Docket No. 123 at pp. 33-34.)   Federal courts have
jurisdiction over state claims when they are "so related to claims
in the action within such original jurisdiction that they form part
of the same case or controversy."   28 U.S.C. § 1367.   Although the
federal   causes   of   actions   against   defendants   Fuentes,   Toledo,
Solivan,   Tirado,   Colon,   Capo,   Figueroa,   and   Capo   have   been
dismissed,   the   Court   can   maintain   jurisdiction   over   the
Commonwealth   claims   remaining   against   them   because   there   is   a
complete overlap in the factual allegations in these state claims
and the remaining federal claims against defendants Baez, Figueroa-
Cruz, Redondo and defendants not party to the motion to dismiss.
The Court **ADOPTS** the magistrate judge's recommendation to maintain
jurisdiction over the Puerto Rico claims against defendants Baez,
Figueroa-Cruz, and Redondo because the factual allegations at issue
are substantially the same in the federal and Commonwealth claims.
The Court **REJECTS** the magistrate judge's recommendation to dismiss
the Puerto Rico claims against defendants Fuentes, Toledo, Solivan,

Tirado, Colon, Capo, Figueroa, and Capo.  The dismissal of the Commonwealth claims against all defendants is **DENIED**.

## I.   Default as to Defendants Tirado and Figueroa

        The magistrate judge recommended that the defendants' motion to dismiss the claims against defendants Tirado and Figueroa in Civil Case No. 09-1835 be denied because these two defendants are in default in that case.  In their opposition to the magistrate judge's R&R, defendants Tirado and Figueroa requested that the default be set aside, so the claims can be dismissed, because they have made appearances and answered the allegations in this case. (Docket No. 161 at pp. 5-6.)  In addition, they argue that because they are not in default in Civil Case No. 10-1097 and the two cases substantially overlap, their defense in that case should be applied as a defense in Civil Case No. 09-1835.[16]  (Docket No. 161 at pp. 5-10.)  The Federal Rules of Civil Procedure allow for "the court to set aside an entry of default for good cause." Fed.R.Civ.P. 55(c). At least three factors are considered when evaluating good cause: "(1) whether the default was willful; (2) whether setting aside the default would have prejudiced [the plaintiff]; and (3) whether [the defendant] has a meritorious defense."  KPS & Associates, Inc. v.

_____

[16] The Court notes that the plaintiffs do not argue against the request to set aside the default judgment in their opposition to defendants' objections to portions of the report and recommendations.  (See Docket No. 166.)

Designs By FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003).  These
factors are not exhaustive, however, and "each case must
necessarily turn on its own unique circumstances."  Id. (internal
citation omitted).

        First, the default was not willful because the defendants
state that they are in default due to confusion in answering both
cases after they were consolidated.  (Docket No. 161 at pp. 9-10.)
Next, because the consolidated cases substantially overlap and the
issues are the same, the plaintiffs will not be unfairly prejudiced
by setting aside the default.  Finally, the defendants do have a
meritorious defense because, as we discussed above, the claims
against these two defendants would not survive a motion to dismiss.
The Court, therefore, **REJECTS** the magistrate judge's recommendation
that the claims against defendants Tirado and Figueroa in Civil
Case No. 09-1835 should not be dismissed.  The Court **DISMISSES** the
claims against defendants Tirado and Figueroa in Civil Case No. 09-
1835.

## IV.  Conclusion

    The Court has made an independent examination of the entire
record in this case, including defendants' objections to the R&R,
plaintiffs' opposition to those objections and accompanying
response to defendants' supplemental motion to dismiss in Civil
Case No. 10-1097, and defendants' reply to plaintiffs' opposition

to the defendants objections to portions of the R&R.  For the reasons above, the Court **ADOPTS IN PART** and **REJECTS IN PART** the magistrate judge's recommendations.  All federal claims against defendants Jose Fuentes-Agostini, Pedro Toledo-Davila, Anibal Solivan-Solivan, Daniel Colon, Hector Tirado, Jose Figueroa, and Jose Capo are **DISMISSED WITH PREJUDICE**.  The section 1983 claims against defendants Francisco Baez-Quiñones, Jesus Figueroa-Cruz and Gabriel Redondo under the Fourteenth Amendment are also **DISMISSED WITH PREJUDICE**.

The remaining claims against the defendants who moved for dismissal are:

1.   Section 1983 claims pursuant to the Fourth Amendment for malicious prosecution and conspiracy against defendants Francisco Baez-Quiñones, Jesus Figueroa-Cruz, and Gabriel Redondo;

2.   Claims arising under Article II, sections 7, 8, and 10 of the Constitution of the Commonwealth of Puerto Rico and articles 1802 and 1083 of the Civil Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142 against defendants Jose Fuentes-Agostini, Pedro Toledo-Davila, Anibal Solivan-Solivan, Daniel Colon, Hector Tirado, Jose Figueroa, Jose Capo, Francisco Baez-Quiñones, Jesus Figueroa-Cruz, and Gabriel Redondo.

Furthermore, any claim against defendants in these cases who did not participate in the motion to dismiss remain pending.

Civil No. 09-1835 and 10-1097 (FAB/MEL)                                    48

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 8, 2013.


                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    UNITED STATES DISTRICT JUDGE